447 P.2d 586

George ALMLI and May Olive Almli, husband and wife, Appellants,

v.

Edgar R. UPDEGRAFF, Appellee.

No. 2 CA–CIV 509.

Court of Appeals of Arizona.

Dec. 4, 1968.

Rehearing Denied Jan. 14, 1969.

Review Denied Feb. 18, 1969.

Manuel H. Garcia, Tucson, for appellants.

Spaid, Fish, Briney & Duffield, by Richard C. Briney, Tucson, for appellee.

KRUCKER, Judge.

This is an appeal from an order of the Superior Court of Pima County granting summary judgment in favor of defendant.

Plaintiff commenced an action against the defendant, a physician, alleging that defendant negligently and incorrectly diagnosed her condition, and that the defendant negligently failed to use the care ordinarily used by doctors in his treatment of plaintiff.

Shortly before the trial, defendant moved for summary judgment, and the matter was submitted to the trial court on the depositions of four physicians, including the defendant, who were acquainted with the plaintiff's medical problem. Both parties have relied on these depositions as being dispositive of the matter, and have not indicated in any manner that all possible evidence was not before the court. The trial court, having taken the matter under advisement, granted the defendant's motion for summary judgment, and this appeal followed.

■ In an appeal from the granting of summary judgment, the record must be viewed in the light most favorable to the party opposing the motion therefor. Peterson v. Valley National Bank, 90 Ariz. 361, 368 P.2d 317 (1962). Taking this view of the record, the granting of a motion for summary judgment is proper only in cases the record demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Biondo v. General Motors Corp., 5 Ariz. App. 286, 425 P.2d 856 (1967).

The record shows that plaintiff was suffering from severe abdominal pain, and that she contacted defendant for treatment. X-rays were taken, and it was determined that plaintiff's right kidney had dropped and that her ureter had a kink. After a consultation with two other doctors, defendant determined that by raising the kidney and securing it in its normal position the kink in the ureter would be removed. This operation was performed, and in his deposition defendant testified that as part of this operation the upper one/half of the ureter was freed from the surrounding blood vessels and tissue which might have contributed to the obstruction. Defendant testified that in this operation he found the ureter to be unusually relaxed, and that it was his opinion that the raising of the kidney would remove the kink and the obstruction in the ureter. An x-ray taken approximately two weeks after the operation showed that the kink was still present, but defendant attributed this to the fact that improvement in such cases is not usually noted such a short time after surgery.

Following the surgery, plaintiff continued to experience pain in her abdominal area, and she contacted a second physician, Dr. Shultz, for treatment. It was determined by Dr. Shultz that the original kink in the upper ureter was still present. Five months after the operation performed by the defendant, Dr. Shultz operated on the lower portion of plaintiff's ureter, removing some minor constrictions, but this second operation did not appear to affect the kink in the upper portion of the ureter. In this operation Dr. Shultz did not observe the area in which the defendant had operated, and he assumed that the defendant, in raising the kidney, had cleared all obstructions to the upper portion of the ureter. Plaintiff received some relief after the second operation, but the discomfort returned.

Some fourteen months after the defendant had first operated on plaintiff, a third operation was performed on her by Dr. Shultz in the area involving the upper portion of the ureter. At this time it was determined that there was an unusually large adhesion constricting the ureter at the point where the kink was located. Dr. Shultz removed this adhesion and plaintiff thereafter experienced no further difficulties.

■ In Arizona, before a physician may be found liable for malpractice, he must have done something in the treat-

**496**

ment of his patient which the recognized standard of good medical practice in the community in which he is practicing forbids. Both the medical standard and the departure therefrom must be established by expert medical testimony unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938). The case before us is not one which would permit a finding of malpractice in the absence of expert medical testimony. Cf., Tiller v. Von Pohle, 72 Ariz. 11, 230 P.2d 213 (1951).

■ The depositions considered by the trial court in passing on this motion demonstrate without contradiction that there was no negligence in connection with the defendant's diagnosis. The briefs of counsel have concentrated principally upon the allegations connected with negligence in the treatment of plaintiff. The depositions, including the defendant's, establish the medical standard that in an operation to raise a kidney, all exposed portions of the ureter attached thereto should be carefully examined and freed from any possible obstructing tissue. Defendant testified that this was done, but it is plaintiff's contention that the adhesion found by Dr. Shultz in performing the third operation, combined with the fact that the x-rays before and after the defendant operated showed a ureteral kink at the point where the adhesion was found, are evidence that the defendant did not in fact examine and free the ureter at the time the kidney was raised. There is evidence that the adhesion was unusually large, and Dr. Shultz testified that while normally adhesions can be torn loose by using the fingers, this adhesion was so tough it required cutting with a scissors. However, Dr. Shultz's depositions show that he was unable to determine when this adhesion had formed.

The area in which defendant had originally operated had not been observed for some fourteen months, and during this period it is true that the x-rays showed a kink at the location of the adhesion, but the kink was present before the defendant performed the first operation, and his testimony states that the ureter, at that time and insofar as visible, was freed from any possibly obstructive tissue. To refute this testimony plaintiff suggests that because the kink was present when defendant operated, and because the kink was removed fourteen months later by the cutting of an adhesion, that a factual issue exists as to whether defendant actually did free the upper portion of the ureter when he operated. We are of the opinion that the defendant made a *prima facie* showing that the adhesion was not present when his operation was completed, and, this being the case, if plaintiff would rely on the existence of the adhesion at the time defendant performed his operation, then it would be incumbent upon plaintiff to demonstrate that he had competent evidence showing that the adhesion was present. Dr. Shultz, who had first-hand knowledge of the size and condition of the adhesion, could not say that the adhesion was present when defendant operated, he had no opinion as to when it was formed, and he did not know why it formed.

Under these circumstances, we are of the opinion that there was no factual issue, and that to have allowed the jury to consider plaintiff's suggestion would, in essence, have permitted the jury to speculate as to whether the adhesion was present or not when the defendant operated, where an expert in the field with first-hand knowledge of the matter has already confessed an inability to make such a determination.

Plaintiff has raised additional issues on this appeal, the determination of which will be unnecessary in light of the foregoing portions of this opinion.

Having found that the record demonstrated absence of a genuine issue as to any material fact, the judgment of the trial court, granting defendant's motion for summary judgment, is affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.