496 P.2d 602

**George D. KALAR, Appellant,**
**v.**
**M. S. MacCOLLUM and John Ricker,**
**Appellees.**

**No. 1 CA–CIV 1741.**

Court of Appeals of Arizona,
Division 1,
Department B.
May 4, 1972.

Rehearing Denied June 7, 1972.

Review Denied July 13, 1972.

George W. Oglesby, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Frank A. Parks, Phoenix, for appellee John Ricker.

Jennings, Strouss & Salmon by Nicholas Udall, Phoenix, for appellee M. S. Mac-Collum.

JACOBSON, Judge.

In this medical malpractice appeal, we are asked to determine whether the plaintiff-patient sustained his burden of proving a standard of care which was violated by the defendants-doctors.

Plaintiff, George C. Kalar, brought an action in medical malpractice against defendants, M. S. MacCollum and John Ricker, alleging that an operation performed by defendants on his right wrist which fused the bones in that wrist was unnecessary, that defendants incorrectly diagnosed his wrist condition and that the subsequent treatment thereof was improper.

On November 8, 1966, plaintiff sustained an injury to his right wrist in attempting to remove a drain plug from an automobile differential. Since this injury occurred in the course and scope of plaintiff's employment, the injury was treated as industrial in nature under the jurisdiction of the Industrial Commission of Arizona. Following his injury, the plaintiff was treated by his personal physician who diagnosed his condition as synovitis (inflammation of the synovial membrane which lines the various joint cavities in the wrist). X-rays taken at this time failed to disclose any bone or joint pathology. Treatment by his personal physician consisted of an elastic support for the wrist and injections of cortisone. When plaintiff's condition did not improve, he was referred to the defendant, Doctor Mac-Collum, on January 20, 1967, who concurred in the diagnosis of synovitis and recommended the continuation of the cortisone injection. He further recommended that if the plaintiff did not improve, his wrist should be immobilized in a plaster cast for at least three weeks.

The plaintiff's condition did not improve and the cast was applied by his own doctor. After the passage of three weeks, his own doctor removed the cast, but four days later the plaintiff complained the wrist was worse and at this point the case was transferred to Dr. MacCollum in its entirety. Dr. MacCollum's examination after the referral indicated the possibility of a fracture of the navicular bone in the wrist and reapplied a cast which the plaintiff wore for a period of approximately six weeks. After removal of the cast, Dr. MacCollum recommended that the plaintiff start gradual use of the wrist. Additional treatment by Dr. MacCollum resulted in little or no improvement, so on July 5, 1967, the plaintiff was referred to the "Hand Board" of the Industrial Commission. This board consists of physicians who specialize in the treatment of the hand, wrist and arm and who advise the Industrial Commission both as to treatment and as to degrees of disability resulting from injuries in this locality. The defendant Ricker was a member of this board and his first contact with the plaintiff was at this board examination.

The board examined the plaintiff, reviewed previous X-rays, and recommended that further laboratory work be obtained and an anti-inflammatory drug be administered. At this time, the board considered the possibility that a fracture was present, but this was not conclusively established and the only definite diagnosis was that evidence of damage to the carpel area was present. Testimony at the time of trial indicated that the presence of a fracture of wrist is exceedingly difficult to ascertain from X-rays.

Following the recommendation of the hand board, Dr. MacCollum continued to treat the plaintiff including the use of a plastic splint, until October 25, 1967, when the plaintiff was again examined by the hand board. The conclusion of the board, after examination, was that pathology existed in the navicular bone of the wrist, that the plaintiff had degenerative joint disease and that he suffered from synovitis. The board was unable to conclude, however, whether the pathology was the result of a fracture. Because of their findings, the board recommended exploratory surgery and depending upon the findings at that time, the removal of the synovium or a fusion of the wrist.

Surgery was performed by Dr. Mac-Collum, assisted by Dr. Ricker on November 14, 1967. The surgery revealed that the end of the navicular bone had died, necessitating the removal of the dead bone, and the fusion in its place of a piece of bone taken from the plaintiff's hip. This fusion was unsuccessful and two additional operations followed.

In addition to the above facts, plaintiff at the time of trial produced a report from a radiologist who had examined the plaintiff's X-rays stating that, "I believe there is evidence of a chip fracture on the radial side of the proximal end of the navicular carpal." Plaintiff further produced the opinion of a general practitioner who had received X-rays of the plaintiff's wrist only, that based upon the X-rays alone a fusion of the writ was not in order. The only other medical testimony presented by the plaintiff, other than cross-examination of the defendant doctors, was that of a pathologist who testified that from bone samples left over after the fusion operation, he found no diseased bone.

Plaintiff tried his case on the theory that in fact his wrist was fractured and that the defendants had not followed the standard of care of the profession in treatment of that fracture, resulting in the death of a portion of the bone. The only medical witness to testify as to a standard of care in the treatment of fracture was the defendant Dr. Ricker who admitted that he did not follow this standard, since in his opinion, no fracture was present. Dr. Ricker further testified this diagnosis was verified at the time of surgery. Dr. MacCollum also testified that the condition revealed by the exploratory surgery was not consistent with a fracture but was the result of an avascular necrosis of the navicular. The plaintiff presented no other medical testimony as to a standard of care.

Following the close of plaintiff's case as to the liability, all defendants moved for a directed verdict which was granted by the trial court. This appeal followed.

■■■ A doctor is not liable in negligence for his mere mistakes in judgment in the treatment of his patient, but is only liable where his treatment falls below the recognized standards of good medical practice. Almli v. Updegraff, 8 Ariz.App. 494, 447 P.2d 586 (1968). This rule is further conditioned upon the requirement that unless the conduct complained of by the doctor is readily ascertainable by laymen, the standard of care must be established by medical testimony. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167 (1960).

■ As previously indicated, plaintiff based his case on the theory that he in fact suffered from a fractured wrist. Assuming that the evidence presented a jury question as to the existence of a fractured wrist (an assumption which, from our review of the evidence, would have to be classified as "vast"), the plaintiff had the threshold obligation of presenting medical evidence of a standard of care in diagnosing fractures and that the defendants fell below that standard in their diagnosis. The plaintiff's proof did not even clear this threshold hurdle. In fact the medical testimony was that fractures of the wrist are exceedingly difficult to diagnose from X-rays and that surgical exploration is preferable. This was the course followed in this case.

The most that can be said of plaintiff's evidence is that it disclosed a suspicion of a fracture which was never verified. No testimony was presented to show that the treatment of a "suspected fracture" should be any different from that followed by the defendants.

■ The plaintiff having failed to establish a standard of care in diagnosis and treatment of a wrist condition such as plaintiff's, he failed to establish a *prima facie* case of liability against the defendants and the trial court correctly directed a verdict in their favor.

The judgment of the trial court is affirmed.

HAIRE, C. J., and EUBANK, J., concur.