OBRAL, APPELLANT, *v.* FAIRVIEW GENERAL HOSPITAL ET AL., APPELLEES.

(No. 46622—Decided November 21, 1983.)

*Mr. Ronald L. Rosenfeld,* for appellant.

*Mr. Jeffrey L. Haniewich,* for appellee Fairview General Hospital.

*Mr. Robert J. Gemperline,* for appellee DeVera, M.D.

*Mr. Leslie J. Spisak,* for appellee Von Baeyer, M.D.

DAY, P.J. In this case plaintiff Mark Obral ("plaintiff") appeals the decision of the trial court granting summary judgment in favor of the defendants Fairview General Hospital and Drs. Von Baeyer and DeVera ("defendants").

For the reasons adduced below, the judgment is reversed and remanded for further proceedings.

I

On July 27, 1980, plaintiff injured his wrist playing softball and went to the Fairview General Hospital emergency room for treatment. He was seen by the attending physician, Dr. DeVera, and an x-ray was taken. DeVera read the x-ray as negative for fracture. The plaintiff was released from the emergency room with his wrist bandaged and in a sling. He was advised that care was rendered on an emergency basis only, and that follow-up care had to be provided by his own doctor.[1] The following day, Dr. Von Baeyer, a radiologist, concurred in the negative reading.

Believing his wrist only sprained, the plaintiff never sought follow-up care. Ten months later, on May 13, 1981, the plaintiff went back to Fairview after the pain in his wrist had gotten worse. It was re-x-rayed and a fracture was revealed. Corrective surgery was required.

The plaintiff filed his action on May 6, 1982, more than a year after his first medical visit, but within a year of his second. His allegations included claims that Drs. DeVera and Von Baeyer, as agents of the hospital, negligently failed to diagnose the fracture. His motion in opposition to summary judgment was supported by an affidavit of an expert stating that the original x-ray did in fact reveal a fracture, and that the fracture revealed in the second x-ray was the same as that in the original.

The defendants' position on summary judgment was that the action was barred by the statute of limitations, R.C. 2305.11(A). Dr. DeVera further asserted, by way of an affidavit of an expert, that the fracture revealed in the second x-ray was sustained after the date of the first x-ray and that, in any event, his care was within professional standards for the community.

II

The plaintiff asserts nine assignments of error. These reduce to three issues applied to each of the three defendants. Since they apply uniformly to each defendant, the issues are treated as the assignments.

III

Issues one and three both involve application of the statute of limitations. Accordingly, they will be considered together.

---

[1] The ER Patient Instruction Sheet also included a box marked with an "X" beside this language:

"X-RAY INTERPRETATION

☒If you had x-rays taken at night or during the weekend, the Emergency Physician will make an emergency interpretation of your films; however, these films will be read again by the Radiologist, usually the next day. If a discrepancy is found between the interpretations of the two doctors, you and/or your doctor will be promptly notified."

### Issue I

"Did plaintiff-appellant bring or commence his action for malpractice within the applicable provisions of Ohio Revised Code Section 2305.11 which provides *inter alia* that such actions be brought '* * * within one year after the cause thereof accrued * * *' (2305.11[A] )"

### Issue III

"Is one who holds himself out, or permits himself to be held out to the public as part of a full service hospital estopped from denying that he is a part of the hospital for determining at what point in time his relationship with a patient of the hospital ends for the application of the 'termination of treatment rule' "

R.C. 2305.11 provides in part:

"(A) An action for * * * malpractice against a physician, * * * or a hospital, * * * shall be brought within one year after the cause thereof accrued, * * *"

Until recently, including the time the present motions for summary judgment were decided, the rule in Ohio had been that a cause of action for malpractice accrued at the latest with the termination of the physician/patient relationship. That the discovery of the fault was not made until after the statute of limitations had run was of no consequence. *DeLong* v. *Campbell* (1952), 157 Ohio St. 22, 27-30 [47 O.O. 27]. Under this rule, the importance of the third issue is apparent. If the doctor/patient relationship terminated on July 27, the claim was time-barred; but if the relationship persisted to at least the date of the plaintiff's second visit, the claim was timely.

After the decision below (but before final disposition on appeal here), the Supreme Court overruled *DeLong* and like cases and adopted a "date of discovery" rule:

"* * * [U]nder R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 117-118. The issue here is whether *Oliver* applies to the present case.

The general rule is that, absent a contrary indication in the overruling decision itself:

"* * * [A] decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." *Peerless Electric Co.* v. *Bowers* (1955), 164 Ohio St.209, 210 [57 O.O. 411], accord, *State, ex rel. Bosch,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 94, 98. See, also, *Vandenbark* v. *Owens-Illinois Glass Co.* (1941), 311 U.S. 538, 542-543; *Linkletter* v. *Walker* (1965), 381 U.S. 618, 627.

The defendants argue the "repose" afforded doctors and hospitals one year after termination of the professional relationship by virtue of the old rule was a "vested right" and that their insurance was based upon this right. But as the United States Supreme Court has noted in a different context:

" 'A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, * * * may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. * * *' " *Mondou* v. *N.Y., N.H., & H. RR. Co.* (1912), 223 U.S. 1, 50; cf. *Thompson* v. *Ford* (1955), 164 Ohio St. 74, 79-80 [57 O.O. 96].

Although the new rule has the potential of exposing doctors (and their insurance companies) to liability for greater periods of time than did the old rule, it is a

procedural change and does not entail the disruption of any contractual or vested right. Cf. *Gregory* v. *Flowers* (1972), 32 Ohio St. 2d 48, 52-55 [61 O.O.2d 295].[2] Whatever rights existed by virtue of an insurance contract were indeed vested; but the crucial conclusion is that they were the same both before and after the *Oliver* decision.

Since *Oliver* was decided while this appeal was still pending and because no vested or contractual rights will be affected, the "date of discovery" rule applies to this case. Accordingly, resolution of Issue I requires an evidentiary hearing to determine whether the action was filed within one year of the date plaintiff discovered or should have discovered the extent of his injury.

Issue I is answered "yes." Issue III requires the same response insofar as it implicates the statute of limitations. The agency issue will be an issue of fact for resolution on the merits. Accordingly, Issue III may be perceived either as moot or as requiring a "yes" response.

## IV

### Issue II

"Do genuine issues of fact exist upon which, when construed most strongly in favor of plaintiff-appellant, reasonable minds could differ thus precluding the granting of summary judgment under Rule 56 in favor of defendants (singularly or jointly) on the issues of (a) the termination of plaintiff-appellant's treatment by defendant-appellees or (b) whether or not defendant-appellees committed malpractice."

Although the motions for summary judgment were mostly concerned with the statute of limitations issue, it appears from the pleadings and affidavits of the parties and those of Drs. Eisenberg and Leventhall that there were substantial factual questions requiring trial resolution.

The pleadings and affidavits construed "most strongly" in favor of the party (plaintiff) against whom the motion was made [Civ. R. 56(C)] raised at least these issues of fact:

(1) Was the fracture showing in the May 13, 1981 x-ray the same fracture now concededly showing on the x-ray of July 27, 1980?

(2) Was there an intervening fracture at the same physical point between July 1980 and May 1981?

(3) If the fracture showing on both x-rays was the same "break," is there an issue with respect to the negligence of defendants DeVera and Von Baeyer for failing to diagnose it either because (a) the plaintiff is entitled to an inference from Dr. Eisenberg's affidavit that a "subtle, but distinct" fracture is missed only through negligence or because (b) the break was distinct enough that a layman could discern it?

(4) Were Drs. Von Baeyer and DeVera employees of Fairview General Hospital at all times relevant to the claims raised in the complaint?

(5) Were Dr. DeVera and Fairview General Hospital negligent in the administration and delivery of medical service to the plaintiff as he alleges because the follow-up instructions given him were misleading, proximately contributing to his injury?

(6) Did plaintiff act to secure legal redress for his claims within the statutory limit from the time he discovered or reasonably should have discovered his injury in the exercise of reasonable care and diligence?

There may be other material issues. One issue will suffice to warrant overruling the motions for summary judgment. Civ. R. 56(C).

---

[2] In *Gregory* the Supreme Court expressed dissatisfaction with the distinction between procedural and substantive changes as that distinction is applied to retroactive modification of statutes of limitation, but the distinction was not discarded.

Accordingly, Section (a) of Issue II is disposed under the principles of law discussed in Subsection III of this opinion. Section (b) requires a "yes" answer.

## V

The judgment is reversed and remanded for further proceedings.

*Judgment reversed and cause remanded.*

NAHRA, J., concurs.

MARKUS, J., concurs separately.

MARKUS, J., concurring. I agree with the majority that none of the defendants was entitled to summary judgment on limitations grounds. The discovery rule announced in *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, applies to this case.

Defendant DeVera also argues that his evidentiary materials demonstrated his due care and eliminated any genuine issue of material fact about his alleged negligence. If so, he was entitled to judgment as a matter of law.

Plaintiff asserts negligence by defendant DeVera (a) in misinterpreting the original x-rays, and (b) in advising him about the need for further consultation and care. To support his motion for summary judgment, defendant DeVera submitted affidavits from himself and another qualified physician. They said the care he provided plaintiff satisfied the standards for comparable physicians in these circumstances. They expressly denied any negligence in the care he gave plaintiff. Plaintiff provided no rebuttal affidavit from a qualified expert that said defendant DeVera was negligent.

A defendant physician is entitled to summary judgment if his evidentiary materials demonstrate due care and the plaintiff fails to respond with contrary evidentiary materials. When negligence must be shown by expert testimony, unrebutted expert affidavits that the defendant exercised due care eliminate any genuine issues of material fact. In that situation, summary judgment for the defendant physician is proper. See *Whiteleather* v. *Yosowitz* (1983), 10 Ohio App. 3d 272; *Morton* v. *Loveland* (Sept. 29, 1983), Cuyahoga App. No. 46359, unreported.

In this case, I believe that the claimed negligence in misinterpreting the described x-ray could only be established by expert testimony. Cf. *Broderick* v. *Gibbs* (1973), 1 Mass. App. 822, 296 N.E. 2d 708; *Kalar* v. *MacCollum* (1972), 17 Ariz. App. 176, 496 P. 2d 602; *Carrigan* v. *Roman Catholic Bishop* (N.H. 1962), 178 A. 2d 502; *Rudick* v. *Prineville Memorial Hospital* (C.A. 9, 1963), 319 F. 2d 764. Therefore, plaintiff's failure to rebut defendant DeVera's affidavits justified a summary judgment on that negligence theory. Evidence demonstrating due care by defendant DeVera (an emergency room physician) would not show due care by defendant Von Baeyer (a radiologist). No evidentiary material denied negligence by anyone other than defendant DeVera.

However, expert testimony was not essential to show negligence in advising a patient with an injured wrist about the need for further care. The collective evidentiary materials provided by defendant DeVera and plaintiff present a genuine issue of material fact on that negligence theory. Therefore, summary judgment was not appropriate for defendant DeVera or any of the other defendants.