PEOPLE v FLENON

1. HOMICIDE—CRIMINAL RESPONSIBILITY—CAUSAL CONNECTION.

A defendant's conviction of a homicide should only be sustained where there is a reasonable and direct causal connection between the injury caused by defendant's act and the death of the victim.

2. HOMICIDE—CRIMINAL RESPONSIBILITY—INTERVENING CAUSE—DOCTOR'S NEGLIGENCE.

A defendant may not exonerate himself from criminal liability for a homicide because of the ordinary negligence of the doctor who treats the victim of defendant's criminal act; only grossly erroneous medical treatment will allow him to be exculpated.

3. HOMICIDE—CRIMINAL RESPONSIBILITY—CAUSAL CONNECTION.

A defendant must take his victim as he finds him and may not escape criminal liability for the death of his victim from serum hepatitis contracted during treatment of wounds inflicted by the defendant simply because a majority of people are able to withstand contraction of the disease or death following contraction.

4. HOMICIDE—CRIMINAL RESPONSIBILITY—INTERVENING CAUSE—NEGLIGENCE.

Negligence, if any, of a physician in failing to prevent contraction of serum hepatitis by the victim of an assault as a result of treatment for the wounds inflicted by the defendant does not amount to the grossly erroneous treatment which will exculpate the defendant when the victim dies of serum hepatitis.

5. WITNESSES—EXPERT WITNESSES—CROSS-EXAMINATION—DISCRETION.

Cross-examination of expert witnesses cannot be divorced from the general rule that the scope of cross-examination falls within the trial judge's discretion.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 40 Am Jur 2d, Homicide § 17.
[2, 4] 40 Am Jur 2d, Homicide § 99.
[5] 58 Am Jur, Witnesses § 841.
[6] 58 Am Jur, Witnesses § 856.

6. Witnesses—Expert Witnesses—Cross-Examination—Criminal
    Law.

> Limiting cross-examination of the prosecution's expert witness by
> the defendant because of misapplication of the rule about
> hypothetical questions being based on facts in evidence was not
> error where the defendant was provided a sufficient opportu-
> nity to question the expert.

Appeal from Recorder's Court of Detroit, Geral-
dine Bledsoe Ford, J. Submitted Division 1 May 5,
1972, at Detroit. (Docket No. 11698.) Decided Au-
gust 29, 1972. Leave to appeal denied, 388 Mich
801.

Anthony Flenon was convicted of first-degree
murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Luvenia D.
Dockett,* Assistant Prosecuting Attorney, for the
people.

*Charles Campbell (Carl Ziemba,* of counsel), for
defendant on appeal.

Before: V. J. Brennan, P. J., and McGregor and
Bronson, JJ.

Bronson, J. Defendant was convicted by jury
verdict of murder in the first degree and sentenced
to life imprisonment. MCLA 750.316; MSA 28.548.
He appeals this conviction as a matter of right
raising several allegations of error.

In the early morning hours of March 21, 1970,
defendant left a house in Detroit carrying a shot-
gun for the avowed purpose of "getting back" at
an unidentified person. He proceeded down the
street until he encountered a group of persons
including Carl Johnson, the deceased. Upon realiz-

ing the defendant had a gun, the group dispersed. Defendant chased the deceased, cornered him behind a parked car and shot him in the upper part of his leg.

Carl Johnson was rushed to a hospital where his right leg was amputated high above the knee because of the severity of the wound. Five weeks later, Carl Johnson was released and returned home. Within a short period of time he substantially weakened and was readmitted to the hospital where he died. The cause of death was found by the doctor performing the autopsy to be serum hepatitis and pneumonia.

Defendant's first allegation of error is that there was an insufficient causal connection between the gunshot wound and death by serum hepatitis to sustain his conviction. The causation necessary in a criminal case was enunciated by this Court in *People v Scott,* 29 Mich App 549 (1971). Therein the Court reversed defendant's conviction for manslaughter since the jury was charged that guilt would result if defendant's acts were the "proximate cause" of the deceased's death. The *Scott* Court found the following statement from another jurisdiction persuasive and incorporated it in the holding:[1]

" 'Tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide and more direct causal connection is required for conviction.' "[2]

Further guidance is provided by *People v Geiger,* 10 Mich App 339, 346 (1968). The *Geiger* Court was confronted with evidence that defendant had beaten his wife and that she subsequently died of

---

[1] *People v Scott,* 29 Mich App 549, 558 (1971).

[2] *Id.,* p 554.

asphyxiation precipitated by choking to death on her own vomitus. The *Geiger* Court held that "the evidence * * * would permit a jury to find that the injuries were ' " 'reasonably calculated to cause death' " ' and that the wounds ' " 'contributed mediately or immediately to the death.' " ' "[3] Thus, a defendant's conviction should only be sustained where there is a reasonable[4] and direct causal connection between the injury and death.[5]

The causation problem in the instant case is compounded by defendant's allegation that serum hepatitis constituted an independent intervening cause suspending his liability. The concept of medical mistreatment becoming an intervening cause was considered in *People v Cook,* 39 Mich 236 (1878).[6] There the victim received medical treatment including the administration of morphine after being shot by defendant. Since the victim's death was attributed to the morphine, defendant claimed that this medicine produced death independent of the wound and suspended his liability. The *Cook* Court found that morphine was a proper and appropriate medicine given by competent and skillful physicians. The legal principles applied by the *Cook* Court depended upon whether the wound was considered mortal and were summarized by its statement that:

---

[3] *See State v Cooley,* 387 SW2d 544, 548 (Mo, 1965) requiring the injury inflicted by a defendant to *contribute mediately* or *immediately* to the victim's death.

[4] *See People v McFee,* 35 Mich App 227 (1971).

[5] The criminal standard requiring proof beyond a reasonable doubt precludes convictions where the causal connection is based upon probabilities or only a reasonable degree of medical certainty. *Commonwealth v Radford,* 428 Pa 279; 236 A2d 802 (1968), and *Commonwealth v Embry,* 441 Pa 183; 272 A2d 178 (1971). *Contrast Commonwealth v Banks,* 447 Pa 356; 285 A2d 506 (1971).

[6] *See Beauchamp v Saginaw Mining Co,* 50 Mich 163, 174 (1883), which cites the *Cook* case with approval and applies it in the area of tort liability.

"In a case where the *wound is not mortal,* the injured person may recover, and thus no homicide have been committed. If, however, death do result, the accused will be held responsible, unless it was occasioned, not by the wound, but by *grossly erroneous medical treatment.* But where the *wound is a mortal one,* there is no chance for the injured person to recover, and therefore the reason which permits the showing of death from medical treatment does not exist."[7] (Emphasis added.)

Although the *Cook* Court did not clearly indicate the nature of the wound at issue, it concluded that the victim's death could not be attributed to the independent act of a third person. Failing to find the wound inflicted in the present case from which the deceased initially recovered to be mortal, the type of medical treatment rendered requires further inquiry.

The Court in *People v Cook, supra,* terminated the defendant's responsibility only if the medical treatment was *grossly erroneous.* This principle was affirmed by the Court's statement in *People v Townsend,* 214 Mich 267, 278–279 (1921), that:

" 'He who inflicted the injury is liable even though the medical or surgical treatment which was the direct cause of the death was *erroneous* or *unskilful,* or although the death was due to the negligence or failure by the deceased to procure treatment or take proper care of the wound.' " (Emphasis added.)

This standard which requires something more than ordinary negligence before exculpating a defendant is sound.[8] The concept of an intervening

[7] *People v Cook,* 39 Mich 236, 240 (1878).

[8] *See People v Dilworth,* 274 Cal App 2d 27; 78 Cal Rptr 817 (1969), *cert den,* 397 US 1001; 90 S Ct 1148; 25 L Ed 2d 411 (1970); *State v Clark,* 104 NJ Super 67; 248 A2d 559 (1968). *But see State v Little,* 57 Wash 2d 516; 358 P2d 120 (1961), in which the court held that a defendant would be relieved of liability only if the malpractice in the

cause is predicated upon foreseeability.[9] Since humans are not infallible, a doctor's negligence is foreseeable and cannot be used by a defendant to exonerate himself from criminal liability.

An application of these standards to the instant case requires an understanding of the alleged intervening cause. The only expert witness testifying at trial was offered by the people. This witness discussed the disease of serum hepatitis and opined that the deceased contracted this disease from the blood transfusion received during the operation to amputate his leg. After indicating that the deceased received a total of 11 pints of blood during medical treatment, he testified that there was a 100% possibility of *exposure* to the disease after receipt of six pints of blood. The incidence of death after such exposure is .01% to 3%.[10] This testimony leads us to the conclusion that the victim's exposure to serum hepatitis upon receiving a blood transfusion necessitated by the injury inflicted by the defendant is clearly foreseeable. Whether the victim contracts the disease and dies depends upon his susceptibility to it. Defendant must take his victim as he finds him and may not escape liability because a majority of the people are able to withstand contraction of the disease or death following such contraction. This disease injected through medical intervention is similar to the injection of morphine causing death in the *Cook* case and cannot itself constitute an intervening cause.

---

treatment of the original injury resulted in new and different injuries which prove to be the cause of death.

[9] *See DeVaughn v State,* 232 Md 447; 194 A2d 109 (1963), *cert den,* 376 US 927; 84 S Ct 693; 11 L Ed 2d 623 (1964); and Prosser, Torts (3d ed), § 51, p 311.

[10] The mortality rate increases with age and may go as high as 20% or 30%. 2 Gray, Attorneys' Textbook of Medicine (3d ed), § 38.36, p 38–53.

The medical evidence concerning this disease similarly precludes a finding that the medical profession's inability to prevent or cure such a prevailing disease constitutes gross mistreatment or an intervening cause. This disease cannot be cultured, precluding experimental testing except by human volunteers, is impossible to detect or screen out from blood, and its cause is currently unknown.[11] The justifiable conclusion based upon this data is that serum hepatitis is an unavoidable risk indigenous to blood transfusions.

Notwithstanding this conclusion, we are not unaware that a new trend in civil law is developing which permits damages against doctors, hospitals, and blood centers for the contraction of serum hepatitis from a blood transfusion.[12] Although recovery has been based upon the theories of negligence, breach of warranty, and strict liability,[13] such is insufficient to constitute an interven-

[11] *Id,* § 38.34, p 38–49. 9 Cantor, Traumatic Medicine and Surgery for the Attorney, § 2147, p 110. Similar conclusions are found in the court's appraisal of this disease in *State v Weiner,* 41 NJ 21; 194 A2d 467 (1963).

[12] We evaluate the merits of this trend only as related to the criminal issue raised herein and reserve decision upon its civil application until appropriately before us.

[13] Civil causes of action were initially denied in *Perlmutter v Beth David Hospital,* 308 NY 100; 123 NE2d 792 (1954), *reh den* 308 NY 812; 125 NE2d 869, and its progeny because of the medical profession's inability to discover, isolate, cure or prevent the disease. *Balkowitsch v Minneapolis War Memorial Blood Bank, Inc,* 270 Minn 151; 132 NW2d 805 (1965); *Koenig v Milwaukee Blood Center, Inc,* 23 Wis 2d 324; 127 NW2d 50 (1964); *Sloneker v St. Joseph's Hospital,* 233 F Supp 105 (D Colo, 1964); 59 ALR2d 768.

Without discussing the dilemma this disease presents to the medical profession, the new trend based upon the cited legal theories is established by the following cases. *Hoffman v Misericordia Hospital of Philadelphia,* 439 Pa 501; 267 A2d 867 (1970); *Cunningham v MacNeal Memorial Hospital,* 113 Ill App 2d 74; 251 NE2d 733 (1969); *Baptista v St Barnabas Medical Center,* 109 NJ Super 217; 262 A2d 902 (1970); *White v Sarasota County Public Hospital Board,* 206 So 2d 19 (Fla App, 1968); *Hoder v Sayet,* 196 So 2d 205 (Fla App, 1967); *Young v Brooklyn Women's Hospital, Inc,* 54 Misc 2d 645; 283 NYS2d 212 (1967); *Jackson v Muhlenberg Hospital,* 53 NJ 138; 249 A2d 65

ing cause *vis-a-vis* criminal liability. The policy considerations permitting recovery by persons con-tracting serum hepatitis against another responsible for placing blood carrying that disease into the marketplace are not applicable to a defendant. A deceased's civil cause of action for injuries or death does not eliminate a defendant's responsibility for an injury which placed the deceased in a position of peril. If this Court conceded that the medical profession, its hospitals, or blood centers were negligent, such negligence would be unavailing to the present defendant. Negligence in failing to prevent the contraction of serum hepatitis would not reach the proportions of error necessary to satisfy the standard of grossly erroneous mistreatment announced above. The present record affords defendant no comfort and his claim of an intervening cause is rejected.[14]

Defendant's second allegation of error challenges the trial judge's restrictions upon his cross-examination of the prosecution's expert witness. Upon direct examination the people's expert witness testified that serum hepatitis was a disease caused by a virus which destroys the liver. He indicated that infectious hepatitis and serum hepatitis were the two categories into which the virus is divided. The distinctions between the two types of virus are few. Infectious hepatitis has an incubation period from two to eight weeks, is transmitted through the mouth and intestinal tract and can be passed

---

(1969). Also, see Note, *Strict Liability—Whether the Transfusion of Blood to a Patient in a Hospital is a Service or Sale of a Product,* 49 J Urban L 217 (1971); Haut & Alter, *Blood Transfusions—Strict Liability,* 43 St John's L Rev 557 (1969); Trout, *Blood Transfusions,* 73 Dick L Rev 201 (1969); Dunn, *Blood Transfusions and Serum Hepatitis,* 15 Clev-Mar L Rev 497 (1966).

[14] This approach does not preclude a defendant from suspending his liability when he has sufficient evidence to prove that a doctor's failure to diagnose and treat a victim of serum hepatitis within a reasonable time constitutes grossly erroneous medical treatment.

from person to person, thereby creating a public health problem. Serum hepatitis has an incubation period from two to six months, is transmitted through the bloodstream and is introduced through blood transfusions, vaccinations, tattooing, or injections. The color of deceased's body, diminished weight of his liver and fluid in his lungs led the medical expert to conclude that death was caused by hepatitis and pneumonia. The absence of needle marks on the victim's body or knowledge of other circumstances in which the deceased could have contracted infectious hepatitis, similarly led this expert to conclude that death was caused by serum hepatitis contracted during the blood transfusion.

Defendant's cross-examination of this expert witness attempted to create doubts concerning the proffered cause of death by exploring the possibility that death could have resulted from infectious hepatitis. This approach was significant since, if proved, it would sever the causal connection between the wound, blood transfusion and death. The trial judge limited this approach, finding that defendant had no facts in evidence upon which defendant's hypothetical questions could be predicated.

This general proposition cited by the trial judge is supported by an abundance of case law. *In re Anderson Estate,* 353 Mich 169 (1958); *Mapes v Berkowitz,* 304 Mich 278 (1943); *Bosch v Damm,* 296 Mich 522 (1941); *Brown v Ann Arbor R Co,* 183 Mich 574 (1914); *People v Bowen,* 165 Mich 231 (1911). A close reading of these cases reveal that this proposition permitting hypothetical questions only when supported by facts in evidence was established in the context of challenges to such questions when they involved opinions upon the

ultimate issue in the case. Defendant's cross-examination of the expert witness below did not fall within this traditional concept of a hypothetical question. Defendant was not trying to elicit an opinion from the expert as to whether death could be attributed to particular conduct which was at issue. Defendant's cross-examination can be characterized as involving hypothetical questions only in the sense that they were abstract. They involved questions relating to the possibility of the disease being contracted or transmitted in a particular manner. Defendant would be controlled by the proposition relied upon by the trial judge only if he would have requested the expert to offer an opinion as to whether one of the methods described in this cross-examination could be the cause of death in the case at issue. It is at this point that he would be required to produce evidence providing a factual basis for the hypothetical question.

This cross-examination focused upon the infectious type of hepatitis and constituted a permissible method of testing the witness' expertise and validity of his decisions. Medical evidence indicates that:

"In any individual case of viral hepatitis, it is not possible to distinguish on clinical grounds nor are any tests now available to indicate which virus [infectious or serum] is responsible except for the more insidious and prolonged pre-jaundice phase of serum hepatitis."[15]

Since the two viruses are practically indistinguishable,[16] defendant had a right to pursue this line of questioning. This is in accord with the Court's statement in *People v Eaton,* 196 Mich 715, 719–

---

[15] Gray, Attorneys' Textbook of Medicine (3d ed), § 38.34, p 38–48.

[16] *Id,* § 38.36, p 38–52.

720 (1917), that: "full scope should have been given counsel to test the accuracy of the knowledge and diagnosis of the witness, who had qualified as an expert". Unlike the *Eaton* Court which found the cross-examination too restrictive, we believe defendant was provided a sufficient opportunity to question the people's expert. Cross-examination of expert witnesses cannot be divorced from the general rule that the scope of cross-examination falls within the trial judge's discretion. *People v Taylor,* 386 Mich 204 (1971); *People v McClure,* 29 Mich App 361 (1971); *People v Shugar,* 29 Mich App 139 (1970).[17] The failure to find an abuse of discretion supports our rejection of this alleged error.

Defendant's third allegation of error is that the trial judge failed to instruct the jury upon his theory that death did not result from the shooting. In view of the above discussion defendant possessed no basis for an instruction upon an independent intervening cause. After reviewing the instructions as a whole, we find that they appropriately advised the jury of the elements of the offense charged. *People v Dye,* 356 Mich 271 (1959); *People v Iron,* 26 Mich App 235 (1970). Not finding a miscarriage of justice, defendant's failure to object to the instructions given is fatal to the present appeal.

We have reviewed the additional allegations of error raised by defendant and find that they are devoid of merit. Defendant has failed to establish the commission of reversible error and his conviction is affirmed.

Affirmed.

All concurred.

---

[17] *Accord, People v Mobley,* 40 Mich App 551 (1972).