540 P.2d 1227

**STATE of Arizona, Appellee,**

v.

**Raul Daniel HERNANDEZ and Abelardo Teran Corona, Appellants.**

**No. 2990.**

Supreme Court of Arizona,
In Banc.

Oct. 7, 1975.

N. Warner Lee, Atty. Gen., by Robert S. Golden, Phoenix, for appellee.

Jim D. Smith, Yuma, for appellants.

STRUCKMEYER, Vice Chief Justice.

Appellants Abelardo Teran Corona and Raul Daniel Hernandez were convicted by a jury of transportation of marijuana in violation of A.R.S. § 36.1002.07 and sentenced to the Arizona State Prison for terms of five to six years. They appeal.

At approximately 1:00 p. m. on March 29, 1974, a federal narcotics agent received information from an anonymous informer that a blue vehicle would cross the Mexican border loaded with marijuana. At

4:15 p. m. that same day, federal agents observed two cars, one a blue Plymouth, illegally cross from Mexico to the United States through a wide gap in the border fence and proceed to Yuma. The Plymouth was parked and left in a Fed Mart parking lot in Yuma and the drivers of both vehicles, persons other than the appellants, returned to Mexico in the second car. No arrests were made or attempted at this time. Later in the evening, the agents observed appellants arrive in a Pontiac. Hernandez drove away in the Plymouth, while Corona followed behind in the Pontiac. Appellants were shortly thereafter stopped and arrested and both vehicles were searched. Approximately 250 kilos of marijuana were found in the blue Plymouth.

Appellants both attack the sufficiency of the evidence to support a conviction.

## THE EVIDENCE AGAINST CORONA

■■ The record discloses that the previous night Corona and Hernandez went to a bar in Mexico where they met a person identified only as Gustavo. Hernandez testified that Gustavo told him that he (Gustavo) did not have the necessary papers to enter the United States and offered him $100.00 to move a car in Yuma. Hernandez accepted this offer and agreed to meet Gustavo the next day for instructions. The next day Hernandez, Corona and Gustavo met in Mexico. Hernandez finally asked Corona if he could borrow a car to go to Yuma. Corona said that he could.

Corona testified concerning the meeting at the bar:

"Q. * * * How long did you speak with Gustavo, you and Daniel Hernandez?

A. About twenty or thirty minutes.

Q. Was he speaking primarily to you, or was he speaking primarily to Daniel Hernandez?

A. First he was addressing both of us, then after awhile he was mostly addressing himself to Daniel.

Q. Did you overhear the talk between Daniel and Gustovo?

A. No.

Q. What were you doing?

A. I was listening to the music; I was looking around and I wasn't paying attention to what they were saying.

Q. Were you continuing to drink beer at that time?

A. Yes.

Q. Who was buying the beers?

A. The first two beers when we were —Daniel and I were alone, Daniel bought the first two beers, and when this man arrived, he ordered three beers.

Q. This man Gustavo, did he later leave the bar?

A. Yes.

Q. At the time Gustavo left, did you know that Daniel and Gustavo had talked about a car in Yuma?

A. No."

We think the jury could consider in the light of Corona's extended participation in the transaction that his disclaimer of any knowledge that the blue Plymouth contained contraband was inherently incredible. While in the absence of preconcert the mere presence of a person at the time and place of a crime does not make him an aider, abettor or principal, *State v. Sims,* 99 Ariz. 302, 409 P.2d 17 (1966), under all the circumstances of the case the jury could believe that it was highly unlikely that Corona was an ignorant person accidentally present while the criminal offense was being committed.

## THE EVIDENCE AGAINST HERNANDEZ

■ The evidence against Hernandez was more substantial than that presented against Corona. Hernandez took the stand and acknowledged that he made a deal for $100.00 with Gustavo in Mexico to move the Plymouth from the parking lot in the United States. Hernandez personally drove the Plymouth, a fact which might

**248**

lead a jury to the conclusion that he knew where and to whom the delivery was to be made. Hernandez also made certain admissions after his arrest that he was aware that he was transporting Marijuana. While Hernandez denied making these admissions, the credibility of witnesses when their stories conflict is a question of fact for the jury. *State v. Valenzuela,* 101 Ariz. 230, 418 P.2d 386 (1966). It was for the jury to decide whether the participation of both Hernandez and Corona was with the knowledge of the criminality of their conduct.

 Appellants both challenge the ruling by the trial court that the search of the blue Plymouth was a valid border search supported by probable cause.

As to this, the blue Plymouth was observed crossing the Mexican border at a point other than a legal border crossing. The informer's information concerning the color of the vehicle and its probable entry point proved true. The entire episode of leaving the Plymouth in the parking lot to be driven by different individuals soon after its illegal entry raises a reasonable suspicion that it was being used in illegal activity, probably the illegal importation of contraband.

In *State v. Benge,* 110 Ariz. 473, 520 P. 2d 843 (1974) we held:

"It is well established that if law enforcement officers have probable cause for searching an automobile, such probable cause furnishes sufficient constitutional justification for their searching the automobile without obtaining a search warrant, and that in this respect the right to search an automobile is different from and broader than the right to search premises such as home, store, or office. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)." 110 Ariz. at 478, 520 P.2d at 848.

Based upon all the circumstances leading to the search of the Plymouth, we agree with the trial court that probable cause existed and that there was a legal search.

The convictions are affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.