571 P.2d 1016

**STATE of Arizona, Appellee,**

v.

**Lloyd Kenneth POWERS, Appellant.**

No. 3862.

Supreme Court of Arizona,
In Banc.

Oct. 31, 1977.

Rehearing Denied Dec. 6, 1977.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, Rudy J. Gerber, Deputy Public Defender, Phoenix, for appellant.

GORDON, Justice:

Appellant was convicted of involuntary manslaughter, a violation of A.R.S. § 13–456. We have accepted jurisdiction of his appeal pursuant to 17A A.R.S. Supreme Court Rules, Rule 47(e).

At trial, the testimony revealed a rather bizarre chain of events culminating in the death of Mr. John Boushey. Apparently, Mr. Boushey and appellant had never met prior to September 30, 1975. On that evening they had separately journeyed to a bar in Phoenix where, after a few drinks, they played a game of pool. Each man placed a ten dollar wager on their next game, which appellant handily won. At this point, the facts become less than clear, however the testimony indicates the following events took place about 11:00 p.m. Mr. Boushey accused the appellant of cheating, and a brief scuffle ensued. After the other patrons broke up the altercation, the parties shook hands and agreed to play a third game with the same wager. Appellant then left the room momentarily; upon returning, he discovered Mr. Boushey had taken the $20.00 from the bar and had left on foot. Attempting to recover the money, appellant chased Mr. Boushey along Cave Creek Road which was unlighted. When he caught up with the victim, blows were again exchanged. The victim attempted to cross the road in order to escape. Then, according to the state, appellant pushed the victim into the path of the oncoming traffic. A van, being unable to stop, struck Mr. Boushey who died from the injury twenty-five days later. Appellant, on the other hand, contends he grabbed Mr. Boushey and unsuccessfully attempted to restrain him from entering the path of the oncoming traffic.

Eight issues have been raised on appeal, the first of which concerns 17 A.R.S. Rules of Criminal Procedure, Rule 5.6.

### Criminal Rule of Procedure 5.6

Rule 5.6 states:

"Within 3 days after waiver or conclusion of the preliminary hearing, the magistrate shall transmit all papers and records in the case, together with a prescribed transmittal form, to the clerk of the Superior Court. The reporter shall file the transcript in the Superior Court no later than 20 days after the completion of the hearing."

 Appellant's case was kept under advisement by the magistrate for approximately six weeks before an order was issued holding the appellant to answer. This delay, it is argued, necessitates dismissal. We do not agree. Clearly, the time in excess of the three days permitted was an abuse of discretion. *State ex rel. Berger v. Jennings*, 110 Ariz. 441, 520 P.2d 313 (1974). However, appellant has not alleged he was prejudiced by this delay. Since the Rules of Criminal Procedure do not provide for a dismissal of an action if Rule 5.6 is violated, we feel the proper procedure for enforcing the three day time limit lies within 17A A.R.S., Rules of Procedure for Special Actions. Appellant, therefore, was not entitled to a dismissal on these grounds.

### Inflammatory Photographs

 The second issue raised concerns the introduction into evidence of eleven photographs of the deceased. Appellant raised an objection at the time of trial, and now argues the trial court abused its discretion in admitting this evidence. We agree.

The pictures were taken twenty-five days after the incident when death finally arrived. From the photographs, it is clear that a significant deterioration occurred in the victim's appearance during this twenty-five day period. Also, according to the pathologist, some of the cuts and abrasions had already healed. These facts coupled with the medical procedures which had been performed on the body resulted in the photographs not being representative of the condition of Mr. Boushey on the day of the accident. Two of the photographs were a full length view of the corpse on a metal tray extending from the body storage vault; others were closeups of the face, limbs and torso. Dried blood was present under the nose and about the mouth; bloody gauze surrounded a rod which had been inserted through the lower left leg in order to apply traction, and a bloody opening remained in the neck where an airway had been inserted. The face appeared emaciated and ocher colored. Other photographs included a closeup of an arm with a long gaping yellow pus filled wound, a contusion to the right hip, and a bloody cast on the right leg.

At the trial, appellant offered to stipulate to the nature and location of the deceased's injuries, the cause of death (a subdural hemorrhage of the brain), and to the identity of the victim. The fact that the deceased died as a result of being struck by a van driven by a third person was uncontested. In fact, the sole issue in the trial was whether the appellant pushed the deceased, or whether he was attempting to avoid the accident by restraining or pulling back Mr. Boushey from the path of the van. Yet the state still proffered the pictures, opining they were probative of the severity of the impact. Clearly, this is immaterial to whether the deceased was pushed into the path of the vehicle. The witnesses were united in their estimate of the speed of the van as being approximately 25 miles per hour. Similarly, there was no disagreement as to the interaction of the vehicle with the decedent's head being the direct cause of death.

In its briefs, the state abandoned the argument made to the trial court, and relied on a new theory. Without clarification, it now argues "they were relevant in determining how the victim came in contact with the car which would go to proving or disproving the state's theory that the victim was pushed in front of the [North-bound] van". The uncontradicted testimony described Mr. Powers as standing behind Mr. Boushey, with both men facing eastward. Just prior to the accident, Mr. Boushey either was pushed or stumbled forward. The van then impacted with Mr. Boushey's legs

knocking him up, into the windshield. From these uncontradicted facts, it seems clear that the determinative issue turns on what propelled the deceased forward into the roadway—his own actions or a push. In either instance, the angle of impact would have been the same. Thus, neither of the state's theories would justify placing the photographs into evidence. Nor do we find the pictures probative of any other issue. This was not a case where malice aforethought was in issue, as in *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975); similarly the pictures were not admissible under any of the myriad of theories catalogued in *State v. Thomas*, 110 Ariz. 120, 515 P.2d 865 (1973).

■ Although the admission of the photographs was an abuse of the trial court's discretion, *State v. Makal*, 104 Ariz. 476, 455 P.2d 450 (1969); *State v. Robinson*, 328 S.W.2d 667 (Mo.1959), we must next determine whether their admission constituted prejudicial error. The answer turns on whether there is a "reasonable probability under the facts that the verdict might have been different had the error not been committed". *State v. Deschamps*, 105 Ariz. 530, 532, 468 P.2d 383, 385 (1970). If we answer this in the affirmative, then the admission of the photographs was not harmless.

■ Here, as in *Makal*, "the photographs were highly inflammatory, without any particular saving purpose, and could only have tended to prejudice the defendant in the minds of the jurors". 104 Ariz. at 478, 455 P.2d at 452. *See also, State v. Beers*, 8 Ariz.App. 534, 448 P.2d 104 (1968). Virtually every eye witness could not, with certainty, testify as to whether appellant pushed or tried to save the deceased. The four occupants of the van, who, of all the witnesses, had the best view of the incident could not. The one unwaivering witness, Charles Fisher, was traveling behind the van on the unlighted street at the time of the accident. This witness only viewed the actions for one or two seconds and could not see appellant's hands. He testified:

"Q. Did you see Mr. Powers throw his arms up in the air at any point prior to the accident?

"A. No. But, you know, I was driving and everything, and I couldn't keep my eyes on him constantly.

"Q. Didn't keep your eyes on Mr. Boushey constantly, either did you?

"A. Well no. I couldn't, I was driving."

Due to the lack of positive evidence on the critical issue of this case, we feel it is reasonably probable that a different verdict may have been reached, were it not for the inflammatory photographs. For this reason the error in admitting the photographs was not harmless. Although we are reversing the conviction and remanding for a new trial, a number of other issues remain which are of a recurring nature thereby necessitating our attention.

### Superseding Cause

Appellant asserts the evidence presented at trial was insufficient to convict because the van constituted an intervening cause for which he cannot be held accountable.

"To warrant a conviction for homicide, the death must be the natural and probable consequence of the unlawful act, and not the result of an independent intervening cause in which the accused does not participate, *and which he could not foresee*. If it appears that the act of the accused was not the proximate cause of the death for which he is being prosecuted, but that another cause intervened, with which he was in no way connected, and but for which death would not have occurred, such supervening cause is a defense to the charge of homicide." 1 Wharton's Crim. Law and Pro., § 200, p. 448 (12th Ed. 1957) (Emphasis added.)

*See also State v. Ulin*, 113 Ariz. 141, 548 P.2d 19 (1976).

■ Without question, it is foreseeable that vehicles continuously travel the roadways of this city. In fact, the defense asserted at trial was that appellant attempted to stop the victim from running into the path of the van, "because I seen cars coming". Appellant cannot credibly argue that the appearance of the van was

unforeseeable when he admitted actual knowledge. Since the traffic along Cave Creek Road was foreseeable, and the evidence was sufficient for the jury to find appellant pushed the deceased into the path of the vehicle, appellant's conduct constituted the legal cause of the death and he may not be relieved of the consequences of his actions. *McGruder v. State*, 96 Ga.App. 874, 102 S.E.2d 54 (1958); *People v. Parra*, 35 Ill.App.3d 240, 340 N.E.2d 636 (1975).

Appellant has quoted a small portion of *State v. Ulin*, 113 Ariz. at 143, 548 P.2d at 21 stating:

> "Generally, one who unlawfully wounds another is held to the consequences flowing from such injury. Other contributing causes relieve the wrongdoer of the death of a victim only if they are the proximate cause of death."

From this appellant argues the van constituted the proximate cause of death, relieving him of criminal responsibility. This proposition is an incorrect extension of *Ulin*. In *Ulin* we stated "before a physician can be substituted for an accused as the proximate cause of death, he must have committed medical malpractice". 113 Ariz. at 143, 548 P.2d at 21. Malpractice, unlike the traffic here, is unforeseeable. *State v. Rueckert*, 221 Kan. 727, 561 P.2d 850 (1977); *People v. Flenon*, 42 Mich.App. 457, 202 N.W.2d 471 (1972).

 It becomes clear from the context of the entire *Ulin* opinion, that in order to break the chain of causation, any other cause of death must be a superseding cause, not merely a proximate cause. Accordingly, we hold that whenever a defendant's act would not have caused the death of another but for the intervention of an independent force, it must be determined whether the intervening force could have been reasonably foreseen. Only if it was unforeseeable does the intervening force become a superseding cause, relieving the defendant of the lethal consequences of his act.

### A.R.S. § 13–456

 Appellant has asked this court to declare A.R.S. § 13–456 unconstitutional on account of overbreadth and vagueness, but does not allege the statute to be overbroad as applied to his conduct. Normally, an unconstitutional provision of a statute may only be challenged by one who is injured by the particular provision. *McKinley v. Reilly*, 96 Ariz. 176, 393 P.2d 268 (1964). There are, of course, limited exceptions to this rule when a statute is challenged on grounds of overbreadth, such as when others are unable to protect their rights which are at stake in a particular suit. *See, e. g. Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In order to guard against any chilling of our First Amendment rights, another exception to the standing rule has been permitted in "overbreadth" cases even when a person's activities might permissibly be narrowly proscribed. *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, appellant has simply failed to demonstrate that his case falls within these limited exceptions to the standing rule. *See also Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

 As explained below, the portion of A.R.S. § 13–456 under which appellant was convicted gives sufficient warning to enable men of average intelligence to conform their conduct to its dictates. Thus, the statute is not unconstitutionally vague. *State v. Bateman*, 113 Ariz. 107, 547 P.2d 6 (1976). The following instruction was given to the jury:

> "Manslaughter is the unlawful killing of a human being without malice.

> "Involuntary manslaughter is the unlawful killing of a human being:

> "In the commission of an unlawful act not amounting to a felony, or

> "In the commission of an unlawful act which might produce death in an unlawful manner, or

> "In the commission of an act without due caution and circumspection.

> "Involuntary manslaughter is an unintentional killing of a human being. For a

defendant's conduct to constitute involuntary manslaughter:

"a. The defendant must commit a criminal act, and

"b. The defendant's criminal act must cause the victim's death."

The only words within this instruction taken from A.R.S. § 13–456, which could be considered vague are "without due caution and circumspection". But the meaning of these words has been explained previously by this Court in *State v. Sorenson*, 104 Ariz. 503, 455 P.2d 981 (1969). Appellant's claim of vagueness must be considered in the light of previous interpretations. *State v. Bateman, supra,* therefore, one may easily discern the meaning of these questioned words and must conduct himself accordingly. As a result, appellant's claim of vagueness fails.

■ Appellant has also questioned the words in A.R.S. § 13–456(A)(2) which define involuntary manslaughter as the unlawful killing "in the commission of a lawful act which might produce death in an unlawful manner". However, the jury was not instructed with these words. Since appellant's conviction did not arise from this part of the statute, he has no standing to complain of them. *See Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

### Hearsay

■ The fifth point raised by appellant concerns the admission of statements made by the bartender to a Ms. Olsen and a statement made by appellant to a Mr. Brady. In alleging the admission of the bartender's statements to be error, appellant overlooks the fact of his original question to Ms. Olsen: "Do you know either from your own recollection or from what you have heard how much money was involved and the bet on the [pool] game?" On redirect the state followed up with questions dealing with the same conversation. Generally, "whenever part of a conversation is given in evidence by one party, the other may offer the whole conversation". *State v.*

*Lovely*, 110 Ariz. 219, 220, 517 P.2d 81, 82 (1973); *Turley v. State*, 48 Ariz. 61, 59 P.2d 312 (1936). We trust, however, the original question calling for hearsay will be avoided at the retrial.

■ Appellant also objects to the admission of a conversation he had with Mr. Brady approximately one day after the incident. Mr. Brady related "[the defendant] said he got out and was pounding the hell out of him. And he hit him and knocked him into the street and a truck hit him * * *." This statement constitutes an admission. Under the rules of evidence in effect at the time of the trial, the statement was admissible as an exception to the hearsay rule. *State v. Reynolds*, 108 Ariz. 541, 503 P.2d 369 (1972). Under the new rules of evidence the statement, as an admission, is not hearsay. Rule 801(d)(2), Arizona Rules of Evidence.

### Jury Instructions

The trial court's rejection of appellant's jury instructions has also been questioned. The first two of the requested instructions were California Recommended Instructions which paraphrased A.R.S. § 13–462, another refused instruction. Appellant presents two theories on why A.R.S. § 13–462 is applicable to this case: (1) the homicide was justifiable in order to prevent the completion of a felony and (2) it was justifiable on the basis of self-defense.

■ Before an instruction may be given, it must be predicated on the evidence. *State v. McIntyre*, 106 Ariz. 439, 477 P.2d 529 (1970). Here, the evidence simply does not support appellant's theories. The interaction at issue concerned $20.00 taken from the top of the bar. Assuming appellant was the rightful owner, this does not rise to the level of a felony. Consequently, the proposed instructions would have been inappropriate. *Viliborghi v. State*, 45 Ariz. 275, 43 P.2d 210 (1935).

■ Before the self-defense justification would be appropriate the circumstances must "reasonably create a fear of great bodily injury". *State v. McIntyre*,

106 Ariz. at 445, 477 P.2d at 535. The only evidence of fear in the record is:

"Q. Were you ever in fear while you were fighting with this man, Mr. Boushey?

"A. A couple of times. When he hit me with that pool stick, and then when he hit me in the stomach on the side of the road."

The pool stick incident occurred in the bar, prior to Mr. Boushey fleeing with the money, and is not material to the later events in the road where no cue stick was present. Nor, in view of appellant's testimony is the blow to his stomach adequate to justify the homicide.

"Q. What happened after this scuffle got started over there on the west side of Cave Creek Road?

"A. I started getting the best of him, and he broke and started to run again across the road. I caught him * * * he lunged forward * * * the car hit him."

After contact has been broken, one cannot pursue and kill merely because he was once in fear of great bodily harm. Under such circumstances, appellant was no longer resisting. Additionally, "such person * * if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed". A.R.S. § 13–462(3). We hold, therefore, the evidence did not support the use of A.R.S. § 13–462 as an instruction.

The other two proposed instructions were denominated, D–5 and D–7. Instruction D–5 stated:

"When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil design, intention or culpable negligence, he does not thereby commit a crime."

Instruction D–7, which was A.R.S. § 13–460, stated in part:

"Homicide is excusable when:

"1. Committed by accident and misfortune, or in doing a lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent."

These proposed instructions were adequately covered by the court's instruction:

"The unintentional killing of a human being is excusable and not unlawful when committed by accident, and misfortune in the performance of a lawful act by lawful means and where the person causing the death acted with that care and caution which would be exercised by an ordinarily careful and prudent individual under like circumstances."

"Where matters are adequately covered by other instructions, it is not error for the trial court to refuse to single out a particular element of the case for special instruction." *State v. Taylor*, 109 Ariz. 267, 274, 508 P.2d 731, 738 (1973); *State v. Woolery*, 93 Ariz. 76, 378 P.2d 751 (1963).

The remaining paragraph of A.R.S. § 13–460 only applies to "sudden * * * provocation or upon sudden combat". Since the appellant, after contact was broken, pursued and caught the victim, he was not entitled to the excuse provided in A.R.S. § 13–460(2). *State v. Myers*, 59 Ariz. 200, 125 P.2d 441 (1942).

The remaining two issues concern the admission of appellant's prior felony conviction and the state's use of a rebuttal witness who was not discovered until after the trial began. These problems will not arise again because the state now possesses the proper documents to prove the prior conviction and appellant now has notice of the rebuttal witness sufficiently in advance of trial.

Although seven of appellant's issues did not improperly affect his conviction, the use of the inflammatory photographs probably affected the jury's deliberations of this closely contested case. In order to assure appellant of his right to a fair trial, we reverse and remand for a new trial.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.