603 P.2d 502

**STATE of Arizona, Appellee,**

v.

**Rex Eugene AUSTIN, Appellant.**

No. 4352.

Supreme Court of Arizona,
En Banc.

Oct. 30, 1979.

Rehearing Denied Dec. 4, 1979.

Stephen D. Neely, Pima County Atty. by Jeffrey D. Ross, Deputy County Atty., Tucson, for appellee.

Walter B. Nash III, Tucson, for appellant.

HAYS, Justice.

After a jury trial, appellant Rex Austin was convicted of murder in the first degree and sentenced to life imprisonment without benefit of parole for 25 years. Denied a new trial, he has appealed and we take jurisdiction pursuant to A.R.S. § 13–4031.

## FACTS

On December 20, 1977, the body of Milton Letchworth was discovered buried beneath a pile of rocks in the desert north of Tucson. The body was clad in blue jeans and socks; a blanket was wrapped around the upper torso. Both the ankles and wrists were bound by a single piece of rope.

Subsequent investigation by the Pima County Sheriff's Department revealed that Letchworth had left California en route to North Carolina on a motorcycle. Since the motorcycle was missing, a search was launched.

In March, 1978, the Sheriff's Department of Manitou Springs, Colorado, informed Pima County authorities that they had located Letchworth's motorcycle.

Having interrogated several individuals, Pima County detectives finally traced the \motorcycle to William Ramsey in Rosenberg, Texas. At first, Ramsey claimed to have won the motorcycle in a poker game. Ultimately, however, he implicated appellant in the murder of Letchworth.

Armed with a search warrant based on information supplied by Ramsey, Pima County deputies searched appellant's house trailer in Tucson. Among the items seized were a chain belt (a belt made from the primary chain of a motorcycle) and a sledgehammer allegedly used to beat and kill the victim.

In addition, deputies seized appellant's .44 magnum when they arrested him as he approached the trailer with the gun drawn.

## ISSUES

Appellant raises five questions:
1) Was appellant denied effective assistance of counsel?
2) Did the trial court err in not granting a new trial based on newly discovered evidence elicited under hypnosis?
3) Does allegedly perjured grand jury testimony warrant reversal?
4) Did the trial court err in admitting a certain photograph?
5) Was a jury instruction sought by appellant improperly refused?

## EFFECTIVE ASSISTANCE OF COUNSEL

Appellant contends that he was denied effective assistance of counsel because trial counsel did not move to suppress evidence seized pursuant to the search warrant and failed to call witnesses to corroborate certain facets of appellant's testimony.

We find no merit in this contention. The record reflects diligent preparation by defense counsel, including a dozen motions in limine. Trial counsel vigorously cross-examined the state's witnesses and sought to undermine their credibility.

Appellant urges us to indulge in one conjecture bottomed on another: 1) if the evidence had been suppressed, 2) perhaps appellant would not have taken the stand. Even if we assume, *arguendo,* that a motion to suppress would have been granted, appellant has not demonstrated that any different result would probably have ensued. One eyewitness testified to having seen at the scene of the crime the items sought to be suppressed and another witness testified that appellant related how he had beaten and killed the victim with those items.

We note that the police seized the .44 magnum incidental to a lawful arrest of appellant and that article would have been admitted in any case. Furthermore, appellant admitted that he fired the gun at the scene of the murder, but supposedly to prevent another individual from killing the victim.

Appellant himself testified that he had constantly worn the chain belt, from which strands of the victim's hair were taken, for months after the death of the victim.

The record also shows that appellant wished a speedy trial and conceded that calling certain witnesses would be of no avail.

■ Considering the entire record, we find that the performance of defense counsel far exceeded the requirements of the "sham and farce" test utilized in Arizona. *State v. Williams,* 122 Ariz. 146, 593 P.2d 896 (1979); *State v. Pacheco,* 121 Ariz. 88, 588 P.2d 830 (1978).

## NEWLY DISCOVERED EVIDENCE

Appellant next argues that a new trial should have been granted because of newly discovered evidence elicited after trial from a defense witness who had been placed under hypnosis.

■ Assuming, *arguendo,* that we were prepared to admit statements under hypnosis (although we have never so held), the material introduced would have to satisfy five criteria: (1) Is it truly newly discovered? (2) May due diligence be inferred from the record? (3) Is it merely cumulative or impeaching? (4) Is it material? (5) Would a new trial *probably* change the verdict? *State v. Davis,* 104 Ariz. 142, 449 P.2d 607 (1969).

■ Under hypnosis, the witness reportedly stated that he had seen a lumpy *rug* in the back of appellant's pickup truck when the state's star witness drove the truck in for gas. The hypnotized witness had no idea what, if anything, was in the rug and could not specify on which of several occasions he had seen the rug.

Appellant and a witness for the state accused each other of the murder, and each stated that the other had wrapped the body in a *blanket* and buried it in the desert.

The nature of the evidence appellant wishes to introduce sheds no light on who *killed* the victim; indeed, it does not even establish what the rug contained. The only possible relevance is a weak, uncorroborated inference that the rug might have contained a cadaver. Neither eyewitness mentions a rug. The jury heard lengthy and conflicting testimony concerning possible motives that both appellant and the state's principal witness might have had to commit the murder. We do not believe that this kind of inconclusive material satisfies the requirement that the new evidence would probably have changed the verdict. *Davis, supra.* More is required then mere conjecture or a possibility and the proffered testimony does not meet that test.

## PERJURED GRAND JURY TESTIMONY

Appellant maintains that he is entitled to a new trial because a state's witness perjured himself before the grand jury that returned the indictment under which appellant was convicted.

We have carefully examined the transcript of grand jury testimony and do not agree. The matters upon which appellant relies to establish perjury simply were not raised before the grand jury. Appellant frames the issue more as one of omission rather than deliberate perjury. Conceding that the specific points were not asked of the witness before the grand jury, appellant asserts that when the prosecutor later discovered inconsistencies in the witness' statements (inconsistencies with statements made earlier to the prosecutor, not before the grand jury), that the prosecutor should have sought dismissal and reindictment.

Appellant relies on *United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974). That case involved a witness who in fact perjured himself when answering questions before the grand jury and later revealed the perjury to the prosecutor.

■ As we have previously noted, the inconsistencies of which appellant complains were unknown to the prosecutor when he and the witness appeared before the grand jury and involved matters not raised at that proceeding. These facts clearly distinguish the case at bar from *Basurto, supra.*

## INFLAMMATORY PHOTOGRAPH

■ Appellant objects to one particular photograph that shows the victim, clad in blue jeans and socks, with a rope about the feet running up to the hands and a blanket around the upper torso. The upper torso was in a state of decomposition, most of which is obscured by the blanket. This picture was taken from a distance of several feet. Appellant contends the photograph falls within the prohibition against inflammatory photographs enunciated in *State v. Powers*, 117 Ariz. 220, 571 P.2d 1016 (1977).

The state argues that the picture corroborates the testimony of its principal witness as to how the victim was bound and covered with a blanket. In addition, the state maintains, the mode of disposing of the body and the isolated locale indicate a conscious desire to hide the crime and malice aforethought. *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975).

Our examination of the photograph convinces us that it cannot fairly be said to fall within the same category as those in *Powers, supra,* and that it was properly admitted as probative of malice and corroborative of testimony by the state's witness. *Ferrari, supra.*

## JURY INSTRUCTION

■ Finally, appellant asserts that the trial judge's failure to give a requested jury instruction was prejudicial and warrants reversal. In pertinent part, the instruction reads:

> A witness willfully false in one material part of his testimony *is to be distrusted in others.* You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you shall believe the probability of truth favors his testimony in other particulars. (Emphasis added.)

Refusing to give that instruction, the trial judge gave the following one:

> You must decide the accuracy of each witness' testimony. Take into account such things as his ability and opportunity to observe, his memory, his manner while

testifying, any motive or prejudices he might have, and inconsistent statements he might have made. Consider his testimony in light of all the evidence in the case.

In our opinion, the trial judge properly rejected the instruction requested by defense counsel. In essence, that instruction tells the jury that they are to distrust any witness who has testified falsely as to any material matter. Weighing the credibility of witnesses is the province of the jury, not the judge. *State v. Tucker,* 113 Ariz. 475, 557 P.2d 160 (1976); *State v. Hernandez,* 112 Ariz. 246, 540 P.2d 1227 (1975). The instruction given strikes the appropriate balance between making the jury mindful of the elements to consider in weighing testimony and affirmatively instructing them to distrust a witness. We find no error.

In compliance with A.R.S. § 13–4035, we have thoroughly examined the entire record and find no fundamental error.

The judgment and the sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN, J., concur.

GORDON, Justice (specially concurring):

I do not believe that defense counsel's performance should be measured against a mere "sham and farce" standard. As I stated in *State v. Williams,* 122 Ariz. 146, 155, 593 P.2d 896, 905 (1979), the Sixth Amendment requires that "[c]ounsel must afford defendant reasonably effective representation, within the range of professional conduct customarily expected of an attorney in a criminal case." The record in this case, however, does not support appellant's contention that his trial counsel's representation was less than reasonably effective. Therefore, I concur in the result.