*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CLAUDINE PARKER-SMITH,

Defendant-Appellant.

UNPUBLISHED
February 20, 2020

No. 346384
Wayne Circuit Court
LC No. 18-004456-01-FH

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial convictions of discharging a firearm from a vehicle causing injury, MCL 750.234a(1)(b), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 19 months to 15 years' imprisonment for the discharging a firearm conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. BACKGROUND

This case arises out of the events taking place on the morning of May 3, 2018. According to the victim, A.H., she was walking home from a trip to the store. A.H. suffers from severe arthritis in her knees, so she is required to take breaks on her walks. Consequently, A.H. stopped on the street of her friends' house to rest on some porch steps. A.H. knew that two other houses on that street were abandoned and that a woman she did not know lived in another house on the street. At trial, A.H. identified defendant as that woman. While sitting on the steps of a house she knew to be abandoned, A.H. noticed defendant approaching her. Defendant said to A.H., "I don't want you sitting there." Defendant then informed A.H. that she was a police officer. Defendant was in fact employed as a reserve police officer by the City of Detroit. A.H. informed defendant about her arthritis and said that her "knees were bad and [she was] not going anywhere". Defendant told A.H. that she was going to call her "brothers," went into her home, then came back outside and got into her car. A.H. remained on the porch steps and opened a can of beer. After a few moments, A.H. decided to continue walking toward her home.

-1-

As she was walking in the street, she heard the sound of tires screeching, and noticed that the source was defendant's car. A.H. got out of the street; she testified that "[defendant] was trying to run me over." A.H. then heard a gunshot and was unsure whether the gun was shot into the air or toward her. The gunshot went past A.H., and A.H. began running into a nearby empty field. Defendant, in the vehicle, followed A.H. into the field. A.H. attempted to run away from the vehicle, with little success, and threw her beer can toward the vehicle behind her as she ran. A.H. testified that as she ran, defendant drove up next to her and attempted to throw a white bucket full of mud or dirt at her. Defendant also fired the gun again, nearly hitting A.H. Defendant then fired the gun a third time, successfully shooting A.H. in her lower leg. A.H. testified that the bullet wound caused her great pain, and she screamed for help. A.H. denied carrying any kind of weapon, reaching for any weapon, or making any threatening statements to defendant. At the hospital, A.H. identified defendant out of a photographic line up.

A.H. was diagnosed with bipolar schizophrenia when she was 10 years old. At the time of trial A.H. was 52 years old. She testified that she regularly takes medication for her mental illness, and that it does not interfere with her everyday life. After the shooting, A.H.'s doctor increased the dosage of medication she takes to manage her mental illness because she was having trouble sleeping and was having nightmares.

Defendant testified that she was at her home on May 3, 2018 when she observed a woman, A.H., walk down the street and sit down in front of a house next to defendant's home. Defendant told A.H. that she should not sit there because the house was broken into a few days before, and A.H. responded that she did not care and was not moving. After going into her house for a few moments and observing A.H. leave the steps, defendant got into her car and began to follow A.H. Defendant explained that she wanted to see where A.H. was going because of recent break-ins in the area. Defendant testified that at some point, A.H. "mooned" her, which defendant explained was fairly common behavior in the area, and "was cursing at whomever." A.H. was walking in the street, and defendant attempted to pass her by driving onto the sidewalk. When defendant did so, A.H. threw something she described as "the solution" into defendant's face. Defendant testified that she later learned "the solution" was beer, but she did not know what it was at the time, and she described it as "burning." Defendant pulled up onto the sidewalk and into the field, where she wiped her face off. When she looked up, she saw A.H. running toward her. Defendant testified that A.H. had one of her hands behind her back. Defendant testified that she "feared for [her] life," so she then shot at the ground in an effort to dissuade A.H. from running toward her. Defendant testified that she fired a total of two shots, after which A.H. was still standing. Defendant then immediately went to the police station.

The trial court rendered a verdict from the bench, observing at the outset that it found neither defendant nor A.H. to have been "entirely truthful." The trial court concluded that defendant had no good reason to continue driving toward A.H. after A.H. mooned defendant other than a desire for further confrontation. The trial court implicitly concluded that defendant had not thrown the bucket at A.H. However, there was no dispute that A.H. sustained a bullet wound from defendant's gun. The court concluded that defendant's use of a gun was not reasonable under the circumstances, because defendant could have driven away, there was no evidence A.H. carried any dangerous weapon, and a thrown beer can posed only a minor threat of injury. The court therefore found defendant guilty of discharging a firearm from a vehicle and one count of felony-firearm. However, the trial court found credible defendant's testimony that she aimed her gun at the ground,

which "creat[ed] some reasonable doubt that there was an intention to do great bodily harm." It therefore found defendant not guilty of assault with intent to commit great bodily harm less than murder and a second count of felony-firearm.

At sentencing, the prosecution argued that the court should assess offense variable (OV) 4 at 10 points on the basis of A.H.'s testimony that she required a higher dosage of her medication, had trouble sleeping, and was experiencing nightmares. Defendant objected to the prosecution's characterization of A.H.'s testimony, and argued that A.H. experienced psychological issues prior to the incident. The court assessed OV 4 at 10 points. The prosecution stated, "I believe [defense counsel and I] agree that OV 17 is properly scored at 10 points," to which defendant did not object. The trial court accordingly assessed 10 points for OV 17, and defendant was sentenced as described above. This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

Defendant argues on appeal that the trial court erred in assessing 10 points each for OV 4 and OV 17, so she is entitled to resentencing. To preserve an issue regarding sentencing, the appellant must "raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the [C]ourt of [A]ppeals." MCR 6.429(C); *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016). Defendant raised an objection to OV 4 at sentencing, and she raised an objection to OV 17 in a motion in this Court to remand.[1] Defendant's issues are therefore preserved for appeal.

This Court reviews a trial court's factual findings regarding scoring variables for clear error and the scoring "must be supported by a preponderance of the evidence." *People v Gloster*, 499 Mich 199, 204; 880 NW2d 776 (2016). " 'Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.' " *Id.* (citation omitted). Clear error exists if this Court is "left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005).

## III. OV 4 – PSYCHOLOGICAL INJURY TO A VICTIM

OV 4 addresses the psychological injury to a victim. MCL 777.34(1).[2] Defendant was assessed 10 points for OV 4, which is required if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). An assessment of 10 points is appropriate if the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). "[P]oints may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim."

---

[1] This Court denied defendant's motion. *People v Parker-Smith*, unpublished order of the Court of Appeals, entered June 7, 2019 (Docket No. 346384).

[2] MCL 777.34 has recently been amended. We will refer to the version of the statute in effect at the time of defendant's sentencing.

*People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017). However, the fact that the victim did not seek treatment is not conclusive. MCL 777.34(2). Evidence of nightmares, the disruption of the victim's life, and plans to seek treatment are sufficient to support assessing 10 points. *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004), overruled in part on other grounds by *People v Lockridge*, 498 Mich 358 (2015); see also *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013) (testimony that an experience was traumatic and caused bad dreams was sufficient to uphold an assessment of 10 points for OV 4). A.H.'s testimony that she suffered nightmares and difficulty sleeping after being shot, and that she required an increased dosage of her medications, suffice to justify 10 points under OV 4. See *White*, 501 Mich at 164; *Drohan*, 264 Mich App at 90.

Defendant argues that because A.H. had pre-existing psychological harm, the evidence of her nightmares, trouble sleeping, and increased medication are insufficient for an assessment of 10 points for OV 4, and did not establish psychological injury requiring treatment. However, A.H.'s psychological difficulties after the shooting were not simply a continuation of her existing conditions. Rather, she suffered more than merely fear of being shot; rather, she suffered significantly *increased* nightmares and a need for *increased* medication and psychological treatment. In general, defendants must take their victims with any injuries or weaknesses already present, and defendants are held responsible for aggravating or increasing those injuries. See *People v Flenon*, 42 Mich App 457, 462; 202 NW2d 471 (1972); *People v Schaw*, 288 Mich App 231, 235-236; 791 NW2d 743 (2010). The trial court properly assessed 10 points for OV 4.

## IV. OV 17 – NEGLIGENCE EXHIBITED BY DEFENDANT

OV 17 considers the degree of negligence exhibited by defendant. MCL 777.47(1).[3] The trial court must assess 10 points if "[t]he offender showed a wanton or reckless disregard for the life or property of another person." MCL 777.47(1)(a). Wantonness is defined as " 'conduct indicating that the actor is aware of the risks but indifferent to the results' and usually 'suggests a greater degree of culpability than recklessness . . . ' " *People v Feezel*, 486 Mich 184, 196; 783 NW2d 67 (2010) (citation omitted). Reckless disregard is defined as an "indifference to the rights of others that is equivalent to a criminal intent." *People v Schaefer*, 473 Mich 418, 438; 703 NW2d 774 (2005). In addition, *Black's Law Dictionary* defines reckless disregard as a "[c]onscious indifference to the consequences of an act." *Black's Law Dictionary* (11th ed).

Defendant argues on appeal that the prosecution did not establish that she acted wantonly or with reckless disregard for human life by pointing and shooting the gun at A.H. Defendant argues that because the trial court acquitted defendant of assault with intent to do great bodily harm, and found that defendant did not have the intent to harm A.H., she therefore should not have been assessed 10 points for OV 17. We find this argument without merit.

MCL 777.47 does not require a finding that defendant acted with an intent to harm the victim, but that defendant acted wantonly or with reckless disregard for the victim's life. The trial

---

[3] MCL 777.47 has recently been amended. We will refer to the version of the statute in effect at the time of defendant's sentencing.

court's finding that defendant might not have intended to harm A.H. is irrelevant to whether defendant acted wantonly or recklessly. Crediting defendant's testimony that she intentionally aimed away from A.H., merely pointing a gun in the general direction of another living being is *per se* evidence of, minimally, a disregard for that being's life. Doing so might be warranted under, for example, a true self-defense situation. However, the trial court's finding that gunfire was an excessive response to A.H.'s conduct effectively precludes any possibility that pointing the gun at A.H. was anything but a wanton or reckless disregard for A.H.'s life. The trial court properly assessed 10 points for OV 17.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel