548 P.2d 19

**STATE of Arizona, Appellee,**

v.

**John Thomas ULIN, Appellant.**

**No. 3172.**

Supreme Court of Arizona,
En Banc.

March 30, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Rudolph J. Gerber, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

John Thomas Ulin was convicted of second degree murder and sentenced to a term of ten years to life in the Arizona State Prison. This court has jurisdiction pursuant to the Ariz.Const. art. 2, § 4 and art. 6, § 5, and A.R.S. § 12–120.21.

Appellant was accused of beating to death his four-year-old stepdaughter.

On August 29, 1974 appellant and his wife were residing with the daughters of the wife's former marriage, one of whom was the victim. That morning appellant could not find his comb. When the girls were unable to find it, he punished them. The babysitter heard the sounds of smacks and cries coming from a bedroom. The girls were further punished by being made to spend the rest of the day in bed.

Late in the day appellant went to the victim's bedroom and found she had wet the bed. Appellant became extremely upset. He jerked the covers to remove her and she landed on the carpeted floor. Again the babysitter heard smacks and cries coming from the girls' bedroom. The victim was hit with such force that she urinated and had a bowel movement.

A few hours later the victim was found to be in an unconscious state. She was taken to the hospital. Within the next twenty-four hours her condition deteriorated. A craniotomy was performed to reduce pressure caused by the swelling of the brain. Shortly thereafter the victim died.

The Maricopa County Medical Examiner found large bruises all over the victim's

head region, as well as the rest of the body. In the doctor's opinion, the child died as a result of the head injuries. He further testified it would have taken three strong blows, a fall from a considerable height, or an auto accident to have caused this type of skull injury.

This appeal raises the following issues:

1. Was the trial judge correct in refusing the requested instructions regarding medical malpractice as an independent intervening cause of death?

2. Did the trial court err in refusing to permit defense counsel to cross-examine and/or impeach his own witness?

3. Did the trial court err in failing to instruct the jury on voluntary manslaughter?

4. Was the instruction on second degree murder improper?

5. Did the trial court err in permitting the defendant's ex-wife to testify as to statements made to her by defendant during their marriage?

Appellant's primary defense was that the physician's intervening negligence was the proximate cause of the victim's death. Extensive medical testimony was presented. The defense submitted a series of jury instructions on the effect of medical malpractice as an intervening cause. The request for these instructions was denied.

"A defendant is entitled to an instruction on his theory of the case if reasonably supported by the evidence." *State v. Miller,* 108 Ariz. 441, 445, 501 P.2d 383, 387 (1972).

Defendant's theory was not reasonably supported by the evidence.

■ Generally, one who unlawfully wounds another is held to the consequences flowing from such injury. Other contributing causes relieve the wrongdoer of the death of a victim only if they are the proximate cause of death. *Drury v. Burr,* 107 Ariz. 124, 483 P.2d 539 (1971). The rationale is that everyone is held to con-

template, and to be responsible for, the natural consequences of his own act. *Wharton's Criminal Law and Procedure,* vol. 1, p. 449 (1958).

Medical aid is a natural consequence flowing from a physical injury. Once an accused inflicts the injury which necessitates medical attention, he is held to assume certain risks attendant thereto.

■ Before a physician can be substituted for an accused as the proximate cause of death, he must have committed medical malpractice.

■ In a criminal setting, medical malpractice will break the chain of causation initiated by the accused, becoming the proximate cause of death, if it constitutes negligent and unskillful treatment and becomes the sole cause of death. *State v. Myers,* 59 Ariz. 200, 125 P.2d 441 (1942).

The question now becomes whether the physician's treatment of the victim was negligent and the sole cause of her death.

The victim was in serious shape when she was admitted into the hospital. Although given treatment, her condition grew steadily worse. Prior to surgery she was moribund and beyond retrieve. The treating physician performed a craniotomy; a surgical procedure used to take pressure off the brain. Shortly thereafter the victim died. The medical examiner testified that the victim died of head injuries. He further stated death would have occurred even if the craniotomy successfully relieved the pressure.

Defense counsel called as an expert witness the neurological surgeon who assisted in the operation. The expert testified that had an angiogram been given prior to surgery, plus additional medication, the victim's chances of survival might have improved from nothing to at best ten percent.

■ A doctor is not negligent for mere mistakes in judgment, but is liable where his treatment falls below the recognized standards of good medical practice in the community in which he practices. *Kalar v. MacCollum,* 17 Ariz.App. 176, 496 P.2d

602 (1972); and *Almli v. Updegraff*, 8 Ariz.App. 494, 447 P.2d 586 (1968).

There was no evidence of negligence, nor that the doctor's treatment fell below recognized standards. At the most, appellant showed that an alternate mode of treatment may have increased the victim's chances to survive by ten percent. The doctor's treatment was clearly free from the degree of negligence required to become / the sole cause of death. Thus the chain of causation leading from appellant's wrongful act to the victim's death was not broken.

A theory proposed by a party does not govern the giving of instructions, since theories are valueless unless reasonably supported by the evidence. The evidence was insufficient to support instructions on the effects of malpractice as an independent intervening cause. We find no error.

Second, appellant sought unsuccessfully to cross-examine his own witness. Defense counsel called the treating physician to testify as to his alleged medical negligence. The court was asked to declare him hostile or alternatively to call the doctor as the court's witness. Both requests were denied. Appellant contends this was error. There is no merit to this argument. Generally, one may not cross-examine his own witness. "A trial court has broad discretion to permit one to cross-examine his own witness upon an adequate showing that the witness was hostile to the party calling him." *State v. Michael*, 103 Ariz. 46, 436 P.2d 595, 601 (1968). Appellant made no showing of hostility. Preclusion from cross-examination was within the trial court's discretion. Additionally, appellant asserts it was error to refuse to allow impeachment of this same witness. A party may impeach its own witness if the witness' statements: 1) surprise the examiner, 2) are material, and 3) damage the examiner's case. Udall, *Arizona Law of Evidence* § 62. Appellant failed to show these prerequisites.

Third, appellant contends that the refusal to instruct on voluntary manslaughter was error. It is well settled that defendant is entitled to instructions on every form of the verdict which is justified by the evidence. In order to reduce murder to manslaughter, the passion aroused must be reasonable under the circumstances. *State v. Harwood*, 110 Ariz. 375, 519 P.2d 177 (1974).

Appellant was "extremely upset" upon discovering his four-year-old step-daughter wet her bed. This is not the type of circumstance that would arouse an ordinarily reasonable person to a heat of passion so as to severely beat a child. Thus, the voluntary manslaughter instruction was properly refused. *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203 (1973).

Fourth, appellant asserts the trial court's instruction on second degree murder was improper. Defense counsel did not object to these instructions. Absent fundamental error, the failure to object to instructions waives any defects. *State v. Winter*, 109 Ariz. 505, 513 P.2d 934 (1973). There was no fundamental error. These exact instructions were approved in *State v. Mendell*, 111 Ariz. 51, 523 P.2d 79 (1974). The absence of fundamental error precludes reversal on this issue.

Fifth, appellant's final argument asserts that permitting defendant's ex-wife to testify as to statements made by defendant to her during their marriage was error. This case involves the "marital communications privilege," as distinguished from the "spouse disqualification privilege." *See* Udall, *Arizona Law of Evidence*, §§ 85 and 92.

After punishing the girls, appellant went to pick up his wife. While driving home appellant called the kids "miserable lying brats." He further stated he was worried about the victim because she would not wake up. At trial, appellant's then ex-wife testified over defense counsel's objection as to the above.

Generally, one spouse may not, without the other spouse's consent, be examined during the marriage or afterwards, as to confidential communications made by one to the other during the marriage. A.R.S. § 13–1802(1); Udall, *supra*, § 92, p. 142. An exception exists to the "marital communications privilege," as well as to the "spouse disqualification privilege," whenever one spouse commits a crime against the other spouse. Udall, *supra*, § 85, p. 131. This exception has been held to apply whenever the testifying spouse's child or relative is endangered by the other spouse. *State v. Whitaker,* 112 Ariz. 537, 544 P.2d 219 (1975); and *State v. Crow,* 104 Ariz. 579, 457 P.2d 256 (1969). Although both these cases concerned the "spouse disqualification privilege," the same rationale applies to the "marital communications privilege." In the instant case, the victim was the stepchild of appellant and the natural child of his wife. The testimony of appellant's ex-wife was therefore properly admitted.

The conviction and sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.