563 P.2d 325

**The STATE of Arizona, Appellee,**

v.

**Louis RAMIREZ, Appellant.**

**No. 1 CA–CR 2029.**

Court of Appeals of Arizona,
Division 1,
Department C.

March 10, 1977.

Rehearing Denied April 12, 1977.

Review Denied May 3, 1977

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Paul P. Prato, Deputy Public Defender, Phoenix, for appellant.

## OPINION

OGG, Judge.

The appellant/defendant Louis Ramirez was tried before a jury and was convicted and sentenced on three counts of an information as follows: Count I, burglary, first degree, 10 to 15 years; Count II, theft of a motor vehicle, 4 to 5 years; Count III, theft of a motor vehicle, 4 to 5 years. All three sentences were ordered to run concurrently. The defendant now appeals from these convictions and sentences.

The defendant raises eight issues which he alleges amount to reversible error in this case.

## I. THE INFORMATION FAILS TO ALLEGE A PUBLIC OFFENSE FOR THEFT OF A MOTOR VEHICLE

█ Both Counts II and III allege the defendant violated ARS § 13–672(a), which reads:

It shall be unlawful for any person to take from another a motor vehicle or motorcycle with the intent to deprive either temporarily or permanently such other person of such motor vehicle or motorcycle.

Defendant argues the charges under this statute are defective because the information alleges the automobiles in question were taken from Blue Ribbon Auto Body with the intent to permanently deprive Southwest Auto Auction of such motor vehicles. Defendant claims that the automobiles must be taken from Blue Ribbon Auto Body with the intent to deprive Blue Ribbon Auto Body of the motor vehicles. Defendant reasons that under the statute and facts of this case, the crime of theft of a motor vehicle was never alleged or proven; the fact that the two automobiles were being held in storage by Blue Ribbon Auto Body for the owners, Southwest Auto Auction, rules out any valid criminal charge since the theft of a motor vehicle does not occur unless the vehicle is taken from one who is the true owner.

We find it difficult to follow defendant's reasoning since the statute does not specify that the vehicle must be taken from the control of the true owner. If we were to follow defendant's theory a thief could not be prosecuted if he took a vehicle from the lawful possession of a bailee, consignee or subcontractor. This is clearly not the law of Arizona for a defendant can be prosecuted under the provisions of ARS § 13–672(a) if he unlawfully takes a motor vehicle from one in possession. *State v. Fulper,* 16 Ariz.App. 357, 493 P.2d 524 (1972); *State v. Scofield,* 7 Ariz.App. 307, 438 P.2d 776 (1968); *R. Perkins, Criminal Law,* 238 (2d Ed. 1969).

## II. THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR MISTRIAL

█ At the trial a police officer testified that at the time of the arrest he advised the defendant he was under arrest for burglary, possession of a stolen automobile and a "traffic body attachment." Defendant's counsel moved for a mistrial on the grounds that the expression "traffic body attachment" referred to a prior bad act and was prejudicial error. We believe the use of the term "traffic body attachment" was an inappropriate choice of words to express the fact that a prior traffic warrant had been issued for the defendant. After reading the transcript we agree with the trial court that this statement, when taken in context, was not so prejudicial as to require a mis-

trial or a reversal in this case. The fact the jury could have believed the defendant might have committed a prior traffic offense does not rise to the magnitude of reversible error. In our opinion such error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Magby,* 113 Ariz. 345, 554 P.2d 1272 (1976).

## III. THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A DIRECTED VERDICT ON THE CHARGE OF BURGLARY, FIRST DEGREE

■ The defendant alleges there is insufficient evidence to support a finding that the burglarious entry was made at night. We find sufficient evidence was presented to enable the jury to determine the burglary was committed at night. The manager of Blue Ribbon Auto Body testified he closed the business after dark around 7:00 p.m. and that the burglary had been completed at the time he returned to the business sometime after 8:00 p.m. that same night to assist the police in the investigation. The owner of Blue Ribbon Auto Body also testified he left the premises after dark the night of the burglary and that when he returned for work the next morning the two automobiles were missing.

## IV. THE COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE ELEMENTS OF BURGLARY IN THE FIRST DEGREE

■ The court instructed the jury that burglary in the first degree as charged in this case has two elements: (1) there must be an entry into a fenced commercial yard, and (2) the entry must be with the intent to commit a felony or theft. ARS § 13–302(A), in listing the type of premises that are subject to a burglary, lists "[A] fenced or otherwise enclosed commercial yard used for storing equipment or supplies . . ." It is defendant's position that the court left out an essential element when the instruction failed to tell the jury that it is not a burglary unless the fenced commercial yard was used for storing equipment or supplies.

We note that this is not an ideal complete instruction on the elements of the crime of burglary. We also note that the evidence clearly indicated the fenced commercial yard at the Blue Ribbon Auto Body Shop was in fact used for storage. It is our opinion that the evidence supports all elements of the charge and that there was no fundamental error in this instruction when viewed with all the other instructions given in this case.

There was no objection made to this instruction at trial and in the absence of fundamental error any objection is now waived. *State v. Wilson,* 113 Ariz. 308, 553 P.2d 235 (1976).

## V. THE COURT ERRED IN PERMITTING THE STATE TO ALLEGE A PRIOR CONVICTION

■ The defendant urges the court failed to comply with 17 ARS Rules of Criminal Procedure, rule 16.1(b) which requires "All motions shall be made no later than 20 days prior to the date set for trial." The sanctions for failure to make a motion in a timely manner are governed by rule 16.1(c):

Any motion, defense, objection, or request not timely raised under rule 16.1(b) shall be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it.

The state on March 3, 1976, pursuant to the authority of 17 ARS, Rules of Criminal Procedure, rule 13.5(a), filed a motion to add an allegation of a prior conviction to the information. The state on April 13, 1976, the day before trial, filed a motion to amend the allegation charging the prior conviction. It appears the state had erroneously listed a prior on March 3, 1976, which was not the prior of the defendant, but was in fact a prior conviction relating to another individual bearing the same name as the defendant.

The defendant objected to the state's motion to amend the information by correcting the allegation relative to a prior conviction on the grounds that such motion was un-

timely. The court overruled the motion and the state was allowed to correct the allegation relative to the prior conviction.

We find no abuse of discretion under the facts of this case. The evidence presented at the hearing on the motion clearly supported the court's finding that the defendant was not prejudiced. Defendant and his counsel were aware that the state intended to file an allegation of a prior conviction as early as March 3, 1976. Defendant and his counsel were both aware of the underlying facts relative to the prior conviction since defendant's counsel was representing the defendant on a probation revocation hearing during the same time period and had all the facts concerning the prior convictions of his client.

## VI. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILT OF THE PRIOR CONVICTION

At the trial on this issue the state, over objection, was allowed to introduce into evidence a certified copy of a minute entry covering the sentencing on the prior crime charged. The state called a deputy adult probation officer who testified that he had prepared the presentence report on this prior criminal charge and that the defendant was that person covered by his presentence report. The probation officer further testified that he was not present at the actual sentencing of the defendant and therefore could not say the defendant was the actual person sentenced on May 13, 1974.

17 ARS Rules of Criminal Procedure, rule 19.1(b) and ARS § 13–1649 provide the procedural framework for an allegation and factual determination of a prior offender for the purposes of increased punishment under Arizona's criminal statutes.

█ It is the burden of the state to prove that the defendant being tried is the same person who was convicted in the alleged prior conviction. *State v. McGonigle,* 103 Ariz. 267, 440 P.2d 100, rev'd on other grounds sub nom. *State v. Allen,* 105 Ariz. 267, 463 P.2d 65 (1968); *State v. Norgard,* 6 Ariz.App. 36, 429 P.2d 670 (1967). It is our opinion that the state did introduce evidence sufficient to support the jury verdict that the defendant was guilty of the prior offense alleged in the information.

█ It appears to be defendant's main thrust in this argument that the state's proof failed because it introduced a certified minute entry of sentencing and judgment rather than a certified copy of the judgment and commitment. Under the current practice in Maricopa County two different certified documents appear to be utilized in the prosecution of habitual offenders: the first is a certified copy of judgment and commitment; the second is a certified minute entry of the sentencing and judgment. A certified copy of the judgment and commitment is prepared if the defendant is sentenced to incarceration with the Arizona Department of Corrections. This document eventually becomes part of the inmate's certified records. If, however, the defendant is placed on probation there is no need to prepare such a document where the offender is not to be incarcerated. Therefore a certified minute entry of the sentencing and judgment is prepared in cases where probation is given to the defendant.

Both documents put the accused on notice of the date, place and type of conviction and both are signed by an Arizona Superior Court Judge and certified. In our opinion either of these documents is admissible in evidence to prove a prior conviction. See 17 ARS Rules of Criminal Procedure, rule 26.-16. The mere fact that the certified copy of judgment and commitment is more commonly used and recognized does not mean that the certified minute entry of sentencing and judgment as used in this case is somehow inadmissible evidence. To so rule would be exalting form over substance. See ARS Const. Art. 6, § 27.

## VII. THE COURT ERRED IN PERMITTING THE STATE TO CROSS–EXAMINE THE STATE'S WITNESS SHARON JACKSON

█ The state's witness, Sharon Jackson, on December 15, 1975, the night of the

burglary, was able to identify the defendant as one of the men she saw leaving the Blue Ribbon Auto Shop. She was able to recognize the defendant as one of her neighbors whom she had known for some time.

However, on April 14, 1976, at the identification (DESSUREAULT) hearing, she could not identify the defendant. At that time the court found the state had been surprised by her inconsistent conduct and statements and that the state could treat her as an adverse witness for purposes of cross-examination.

The next day, on April 15, 1976, the state, over objection, was allowed to treat Sharon Jackson as an adverse witness and impeach her testimony relative to her conflicting statements concerning the identification of the defendant. The defendant contends the state knew of these conflicting statements the day before trial and was therefore not surprised at trial. Defendant reasons that the recent case of *State v. Ulin*, 113 Ariz. 141, 548 P.2d 19 (1976), requires that "[A] party may impeach its own witness if the witness' statements 1) surprise the examiner; 2) are material; and 3) damage the examiner's case." 548 P.2d at 22.

The question of whether a witness may be cross-examined or impeached by the party calling him lies in the sound discretion of the trial judge and that discretion will not be disturbed unless it is shown to be clearly abused. *State v. Wright*, 103 Ariz. 52, 436 P.2d 601 (1968); *State v. Lane*, 69 Ariz. 236, 211 P.2d 821 (1949).

Under the facts of this case we find no abuse of discretion. The state's principal eye witness, Sharon Jackson, who first identified the defendant for the investigating officers, changed her story and would no longer identify the defendant. The court had reason to believe she was now in collusion with the defendant and his family. The testimony of Sharon Jackson was material and her changed testimony at the identification hearing was a surprise and was damaging to the state's case. The court warned her at that time about the penalties of perjury and it was not known what her exact testimony would be before the jury once the trial actually commenced. The case of *State v. Skinner*, 110 Ariz. 135, 515 P.2d 880 (1973) appears to be directly on point wherein the court held under similar facts that a party may impeach his own witness if such a witness has testified to some fact that is prejudicial or damaging to such party calling the witness.

## VIII. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICTS THAT THE DEFENDANT COMMITTED THEFTS OF MOTOR VEHICLES WITH INTENT TO PERMANENTLY DEPRIVE

 It is defendant's position that the state failed to prove he participated in the thefts of the two vehicles with intent to permanently deprive the owner of his property. The evidence established that the defendant was arrested while riding as a passenger in one of the stolen vehicles near the premises from which the vehicle was taken. The other stolen vehicle was found parked behind an apartment complex which was located nearby the scene of the burglary.

It is our opinion that there was sufficient evidence for the jury to find the defendant guilty of two counts of car theft. The fact that efficient law enforcement resulted in the speedy apprehension of the defendant before the vehicles could be removed a more substantial distance from the scene does not necessarily indicate the defendant only intended to temporarily deprive the Body Shop of the vehicles. The defendant admitted that he stole the cars at the time of his arrest and prior to this appeal the defendant never attempted to explain to anyone that he only intended to joyride in the vehicles.

 The wrongful taking of another's property without an apparent purpose to return it and without explanation evidences an intent to permanently deprive. *State v. Jackson*, 101 Ariz. 399, 420 P.2d 270 (1966).

The judgments and sentences of the trial court are affirmed.

JACOBSON, P. J., Department C, and FROEB, C. J., Division 1, concur.