NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

AARON ROMAN FREEMAN, *Appellant.*

No. 1 CA-CR 19-0666

FILED 1-19-2021

Appeal from the Superior Court in La Paz County
No. S1500CR201700259
The Honorable Robert Duber II, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Carr Law Office PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1  Aaron Roman Freeman appeals his convictions and sentences for first-degree felony murder, two counts of child abuse, and two counts of aggravated assault. The victim on all counts was A.S., Freeman's three-year-old daughter. For the following reasons, we affirm.

## BACKGROUND

¶2  We view the evidence in the light most favorable to sustaining the jury's verdicts, resolving all reasonable inferences against Freeman. *State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

¶3  Freeman worked at his step-grandfather's tire shop, located in Ehrenberg, Arizona. Freeman went to work on Saturday, June 10, 2017, and A.S. went with him. On their way to the tire shop, they stopped at a drive-thru to get breakfast and at a convenience store to buy candy.

¶4  As shown by surveillance video from the tire shop, Freeman and A.S. arrived at the tire shop at around 11:15 a.m. After Freeman tossed A.S. her breakfast burrito, she ate it, and sat on the floor. Throughout the three-hour video, Freeman became increasingly violent in his interactions with A.S. He is seen pulling A.S. by her hair and grabbing her. A.S. appeared to ask for water, opened her mouth, and Freeman threw water in her face. Freeman also grabbed and twisted A.S.'s arm until she dropped to the ground. Later in the day, he hit her in the face, causing her to spin around and fall down onto a tire. Freeman later admitted in a police interview to "popp[ing]" A.S. in the mouth but claimed she had used a bad word and needed to be disciplined. Two and a half hours after arriving at the tire shop, Freeman led A.S. into a storage room. When A.S. put her arm through the door, Freeman used both arms to pull the door closed with A.S.'s hand in the door, smashing her hand in the door. A.S. appeared to scream out in pain and looked at her hand as she pulled it free. Freeman then pushed A.S. by the head into the storage room and out of the video frame for a few minutes. While this occurred, at one point the video shook.

¶5　　　　Freeman exited the storage room and returned with a blue towel. Freeman then continued to work while A.S. was in the room. He then returned to the room. As Freeman and A.S. left the room a short time later her hair appeared disheveled. Police later discovered a pool of A.S.'s blood on the floor of the room, blood splatter on the wall, and the blue towel with blood on it. Freeman later claimed that A.S. had a nosebleed from the heat.

¶6　　　　Freeman and A.S. left the tire shop at 2:18 p.m. and drove to their home in Blythe, California, about 17 minutes away. After arriving, Freeman recorded a video of A.S. swimming naked in their pool. The 17-second video showed A.S. struggling to keep her head above water. She reached for the edge of the pool and Freeman pushed her hand away and told her "no, I said no. You're swimming."

¶7　　　　Katie Mays, Freeman's girlfriend at that time, arrived home from work around 6 p.m. She testified that when she arrived home, she noticed A.S. had problems walking. Freeman and Katie then called Katie's sister-in-law, Kerry Mays, to seek advice because Kerry worked in the medical field. She did not answer so they called Freeman's sister-in-law, Mariah, who was also in the medical field.

¶8　　　　Freeman and Katie then took A.S. to the local hospital, Palo Verde, which is a small facility that lacks the ability to treat high-needs pediatric patients. While A.S. was in the hospital, Freeman and Katie left to get dinner and some belongings. Later in the evening, diagnostic testing revealed that A.S. had free air in her abdomen due to a perforated stomach. The hospital determined it was unable to meet A.S.'s needs and she needed to be transferred to a different hospital. Loma Linda Medical Center, in California, agreed to take A.S. as a patient. Typically, for a patient in A.S.'s condition, Loma Linda would use an air transport team to transport A.S. However, on June 10, 2017, an air transport was apparently not available because of a weather delay or equipment problem. This delayed the transport and A.S. did not arrive at Loma Linda until 7:21 a.m. on June 11. Her condition quickly declined and she died at 8:24 a.m.

¶9　　　　Police began to examine the circumstances surrounding the child's death. Because she died at the hospital in California, initially the Blythe police department investigated. After finding the footage of the tire shop in Arizona, the department reached out to the La Paz County Sheriff's Department for help with the investigation.

3

¶10        Police discovered a block of missing text messages from Freeman's phone covering a four-hour window on June 10 and a block of text messages were also missing from Katie's phone. Police were unable to recover any of those messages. Katie testified that Freeman had access to her phone while they were at the hospital and when they went out to eat.

¶11        Blythe's chief of police, Coe, interviewed Freeman three days after A.S. died. The entire recorded interview was shown to the jury. Freeman admitted to previously leaving marks on A.S. and that he spanked her and made her cry. Freeman also told Coe he smacked A.S. in the mouth and threw a water bottle at her while at the tire shop. But Freeman could not remember grabbing A.S. by the hair or face that day, although he said it was something he would do. At the time of A.S.'s death, Freeman had been her custodial parent for nine months.

¶12        The State charged Freeman with 11 crimes, including felony murder. At trial, Freeman did not testify but defended in part on the theory that his family dog, a large black lab, ran into A.S. and knocked her down when she was outside by the pool. A nurse from Palo Verde Hospital and the forensic pathologist testified that A.S.'s stomach was ruptured from blunt force trauma. A veterinarian testified that while a large dog can knock a child down, he has never known it to be fatal. Dr. Foulad, a general surgery resident at Loma Linda, testified it would take significant force to rupture a stomach and compared it to popping a half-inflated balloon. He opined that being hit with a sledgehammer or tool is consistent with the amount of force necessary to cause such an injury.

¶13        The forensic pathologist testified that she found partially digested food within A.S.'s body. Based on her expertise, on average food takes two hours to digest. Between A.S. eating her breakfast burrito and entering the storage room with Freeman was just over two hours. The autopsy showed bruising and abrasions over many areas of A.S.'s body including her head, arm, lips, leg, and elbow. The jury was also shown the surveillance video of Freeman and A.S. at the tire shop. The portions without the two interacting were fast forwarded, but the jury had access to the entire video.

¶14        The jury found Freeman guilty of (Count 1) first-degree felony murder, (Count 2) second-degree murder, (Count 3) child abuse, (Count 4) aggravated assault, (Count 5) aggravated assault on a minor for rupturing A.S.'s stomach, (Count 8) child abuse (Count 9) aggravated assault for striking A.S. in the face, (Count 10) child abuse, and (Count 11) aggravated assault for smashing A.S.'s hand in the door. Freeman was

found not guilty of (Count 6) child abuse and (7) aggravated assault for kicking A.S. At sentencing, the superior court found that Counts 2 through 5 were encompassed in Count 1 (felony murder) and therefore dismissed those counts. The court sentenced Freeman to various sentences, including life without parole, and he timely appealed.

## DISCUSSION

### A.      Territorial Jurisdiction

¶15      Freeman moved for acquittal under Arizona Rule of Criminal Procedure ("Rule") 20, asserting the State failed to prove there was evidence that he "ruptured the victim's stomach; and that goes to Counts [1] through [5]." On appeal, he argues the evidence in the record is insufficient to prove he inflicted the abdominal injury upon A.S. in Arizona and thus the court erred in denying his motion for judgment of acquittal. We address this argument only as to Count 1 because Counts 2 through 5 were dismissed at sentencing.

¶16      Subject matter jurisdiction is determined under A.R.S. § 13-108, which provides as follows:

> A. This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which such person is legally accountable if:
>
> 1. Conduct *constituting any element of the offense* or a result of such conduct *occurs within this state*; or
>
> . . .
>
> B. When the offense involves a homicide, either the death of the victim or *the bodily impact causing death* constitutes a result within the meaning of subsection A, paragraph 1. If the body of a homicide victim is found in this state it is presumed that the result occurred in this state.

A.R.S. § 13-108 (A)(1), (B) (emphasis added). As noted by our supreme court, "[i]n the very rare case in which jurisdiction is legitimately in issue because of contradicting jurisdictional facts, Arizona's territorial jurisdiction must be established beyond a reasonable doubt." *State v. Willoughby*, 181 Ariz. 530, 538 (1995). This is one of those rare cases.

¶17      We review de novo the denial of a motion made under Arizona Rule 20. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he court

must enter a judgment of acquittal . . . if there is no substantial evidence to support a conviction." Rule 20(a)(1). Viewing the evidence in the light most favorable to the State, substantial evidence means "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion . . . beyond a reasonable doubt." *West*, 226 Ariz. at 562, ¶ 16 (quotations omitted). "Both direct and circumstantial evidence should be considered in determining whether substantial evidence supports a conviction." *Id.* When the evidence allows reasonable minds to differ as to the inferences drawn from the facts, the superior court judge has no discretion to enter a judgment of acquittal. *Id.* at 563, ¶ 18.

**¶18** To convict Freeman of felony murder, the State had to prove beyond a reasonable doubt that Freeman committed child abuse, and in the course of and in furtherance of that offense, he caused A.S.'s death. *See* A.R.S. § 13-3623; A.R.S. § 13-1105(A)(2). Child abuse under § 13-3623, subsection A, paragraph 1 states that "under circumstances likely to produce death or serious physical injury, any person who causes a child . . . to suffer physical injury . . . is guilty of an offense . . . if done intentionally or knowingly."

**¶19** Freeman and A.S. lived in California, and Freeman worked in Arizona. All the crimes charged against Freeman, including the felony murder count, were alleged to have occurred in Arizona at the tire shop. All testimony and evidence introduced was to prove the fatal injury took place in Arizona. The video evidence shows A.S. and Freeman entering the back room and when they were out of camera view the camera shook. Police discovered blood on the floor, blood splatter on the wall, and a towel with blood on it in the back room. Additionally, A.S.'s hair appeared in a different condition when she left the back room than when she arrived. The pathologist's testimony established that A.S.'s stomach was likely ruptured roughly two hours after eating, given the time it takes for food to digest. The video shows A.S. and Freeman enter the back room roughly two hours after she ate her breakfast burrito. No evidence was presented to suggest that any element of felony murder took place in California. Because a reasonable jury could find that the fatal injury occurred in the storage room, the superior court did not err in denying Freeman's Rule 20 motion.

**¶20** Freeman challenges the jury instruction on territorial jurisdiction, asserting it was inadequate and confusing, and it failed to note that jurisdiction must be proven beyond a reasonable doubt. Because Freeman failed to object to the instruction at trial, we review solely for fundamental error. Under this standard, Freeman must establish fundamental error by showing "(1) the error went to the foundation of the

case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). If established under prongs one or two, the defendant must also show prejudice, while prejudice is assumed under prong three. *Id.* The "defendant bears the burden of persuasion at each step." *Id.*

¶21 We view jury instructions as a whole to determine de novo whether a given instruction correctly states the law. *State v. Abdi*, 226 Ariz. 361, 363, ¶ 5 (App. 2011). The instruction at issue states:

> A person is legally accountable if he commits by his own conduct and his conduct constituted any element of the offense or a result of such conduct occurs within this state. When the offense involves a homicide, either the death of the victim or the bodily impact causing death constitutes a result within the meaning of this instruction.

¶22 The jury was also instructed on the elements of each count charged, the State's responsibility to prove "each element of each charge beyond a reasonable doubt" and its burden to "prove guilt beyond a reasonable doubt based on the evidence." In addition, the verdict form for Count 1 required a finding that "at least one element of the charge or result" occurred in Arizona.

¶23 We do not evaluate the jury instructions in a vacuum; we review them in context and in conjunction with closing arguments of counsel. *See State v. Johnson*, 205 Ariz. 413, ¶ 11 (App. 2003). Defense counsel repeatedly spoke to jurors about jurisdiction and their obligation to determine whether Freeman ruptured A.S.'s stomach in Arizona. Defense counsel pointed out that the jury instruction was confusing and "lawyerly" but nonetheless informed the jury it must determine the stomach was ruptured in Arizona to find Freeman guilty of Counts 1 through 5. Further, in the State's closing argument, the prosecutor told the jury that the "ultimate question" about "where that ruptured stomach occurred is your decision."

¶24 Although the jury instruction addressing jurisdiction was not clearly worded, the instructions as a whole and the arguments of counsel guided the jury to a legally consistent verdict. Thus, even assuming error occurred, the error was not fundamental.

### B.     Theories of Second-Degree Murder

¶25     Freeman argues the jury instructions on second-degree murder (Count 2) for both knowingly and intentionally were wrong because he was only charged with committing the crime recklessly. The superior court found that Counts 2 through 5 were included in Count 1 (first degree murder) and dismissed them as duplicitous.

¶26     As a matter of judicial restraint, we will consider an issue moot "when our action as a reviewing court will have no effect on the parties," unless the matter presents an issue of "great public importance or one capable of repetition yet evading review." *See Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 5 (App. 2012). Given that our resolution of this issue would have no bearing on Freeman's convictions or sentences, Freeman's argument about the second-degree murder instruction is moot. And because the issue does not involve a matter of public importance that would evade review, we do not address it. *See id.*

### C.     Non-unanimous Verdicts

¶27     Freeman argues his conviction for Count 1 (felony murder) must be reversed because the jurors may have relied on acts or omissions that took place in California. His argument lacks supporting evidence. The State's only theory of A.S.'s death was that A.S. died after Freeman used blunt force trauma inflicted in the storage room of the tire shop in Arizona. There was no evidence presented that any of the abuse took place in California. And to the extent jurors believed any part of Count 1 did take place in California, it is sufficient that at least one element of the crime was committed in Arizona. *See Willoughby*, 181 Ariz. at 540 (finding Arizona had jurisdiction when the murder was committed in Mexico, but the planning occurred in Arizona). Thus, no reasonable justification exists to believe the jury relied on any events that took place in California in convicting Freeman of felony murder.

¶28     To the extent Freeman raises this same issue as to Count 3, we do not address it because that count was dismissed. Similarly, we decline to address as moot Freeman's argument that the verdict for Count 2 was compromised by an amendment to the indictment that failed to give him proper notice. *Supra* ¶ 26.

### D.     Causation

¶29     Freeman argues he was "entitled to an instruction on any theory of the case reasonably supported by the evidence," *State v. Shumway*,

137 Ariz. 585, 588 (1983), and the superior court erred when it did not sua sponte give a superseding cause instruction. Freeman did not raise this issue at trial so we review for fundamental error only.

¶30        Even viewing the evidence at trial in the light most favorable to Freeman, the instruction would still not have been warranted. He argues that because medical staff did not transport A.S. to Loma Linda more quickly, the time taken to transport A.S. constituted a superseding event that proximately caused A.S.'s death. However, "[a]n intervening force is not a superseding cause if the original actor's negligence creates the very risk of harm that causes the injury." *Young v. Envtl. Air Prods., Inc.,* 136 Ariz. 206, 212 (App. 1982), *modified on other grounds and aff'd,* 136 Ariz. 158 (1983). Even assuming A.S. would have survived if she had been transported faster—although no evidence supports that theory—she would not have died had Freeman not ruptured her stomach. *See State v. Ulin*, 113 Ariz. 141, 143 (1976) ("Generally, one who unlawfully wounds another is held to the consequences flowing from such injury. Other contributing causes relieve the wrongdoer of the death of a victim only if they are the proximate cause of death."). And the chain of causation is broken if there is medical malpractice only when the medical professional "was negligent and the sole cause of . . . death." *Id.*

¶31        Thus, the superior court did not commit fundamental error by failing to sua sponte instruct the jury on a superseding cause. *See State v. Finch*, 202 Ariz. 410, 415, ¶ 20 (2002), *supplemented*, 205 Ariz. 170 (2003) (finding that when a shooting victim was not found quickly enough to save him proximate cause was not at issue because the gunshot wounds were the cause of death).

### E.        Predicate Felony

¶32        Freeman argues the child abuse ended when he took A.S. to the hospital, and because she died at the hospital, the evidence was insufficient to find her death occurred "in the course of or in furtherance of the predicate felony." We review sufficiency of the evidence de novo. *State v. Bible*, 175 Ariz. 549, 595 (1993).

¶33        A person is guilty of first-degree murder if "in the course of and in furtherance of the offense or immediate flight from the offense, the person or another person *causes the death* of any person." A.R.S. § 13-1105(A)(2) (emphasis added). Freeman seems to argue that the victim must die *during* the felony. We disagree. The State's theory of the case was that during the ongoing child abuse at the tire shop, Freeman inflicted a fatal blow to A.S. by rupturing her stomach in the storage room. The State was

therefore required to prove that Freeman *caused the death* of A.S. by committing the predicate felony, child abuse. *See* A.R.S. § 13-1105(A)(2). Substantial evidence shows that in the course of committing felony child abuse, Freeman ruptured A.S.'s stomach, which in turn *caused* her death.

### F.    Failure to Seek Treatment

¶34    Freeman argues the evidence does not support Count 1 on a "failure to seek treatment theory."  But the State did not argue that theory at trial. Nor was Freeman charged with failing to seek treatment for A.S. Though he did wait to seek treatment for over five hours after he took A.S. to the storage room, no evidence was presented to suggest her death was caused by his failure to seek treatment.  Instead, the State's theory of the case was that Freeman caused A.S.'s death by assaulting her in the storage room.  Thus, we reject Freeman's suggestion that the State's failure to prove this unasserted theory means Count 1 must be vacated based on lack of evidence.

### G.    Confrontation Clause

¶35     Freeman argues his right to confrontation was violated when Kerry Mays testified that while she was alone with A.S. at the hospital she asked A.S. what happened and A.S. responded, "Daddy."  Freeman did not object on either of these grounds at trial.  Thus we review for fundamental error. *See State v. Holder*, 155 Ariz. 83, 85 (1987).

¶36    The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  This clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004).

¶37    The court in *Crawford* left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id*. at 68.  But the court clarified that testimonial statements include those that "would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 51–52 (citation omitted).  Here, there is no indication A.S. thought her statement would later be used in a trial. *State v. Damper*, 223 Ariz. 572, 575–76, ¶ 12 (App. 2010) (holding that a text message was not testimonial because nothing "suggests [victim] intended or believed it might later be used in a prosecution or at a trial").  Further, "[s]tatements by very young children will rarely, if ever, implicate the

Confrontation Clause." *Ohio v. Clark*, 576 U.S. 237, 247–48 (2015). Courts should also consider the questioner's identity. *Id.* at 249 (finding it significant that the child made a disclosure to a teacher and not a law enforcement officer). A.S. made the comment to her father's girlfriend's sister, an aunt-like figure. *See id.* ("It is common sense that the relationship . . . is very different from that between a citizen and the police."). Given these facts, the statements were not testimonial and did not violate Freeman's right to confrontation.

### H.    Expert Witnesses

**¶38**        Freeman argues the court erred in allowing Kerry Mays and her husband, Austin Mays, to testify about bruises they saw on A.S. while at the hospital. Freeman contends the testimony was improperly admitted as expert testimony. Because he failed to object at trial, we review only for fundamental error.

**¶39**        "Lay witnesses may give opinion testimony, even as to the ultimate issue, when it is 'rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" *State v. Doerr*, 193 Ariz. 56, 63, ¶ 26 (1998) (citing Ariz. R. Evid. 701). Contrary to Freeman's assertion, Kerry and Austin testified as lay witnesses, not experts.

**¶40**        Further, Freeman fails to provide any explanation of how he was prejudiced except to say his defense was "gutted." The testimony that A.S. had bruises was cumulative because there were many sources of other evidence that A.S. was often covered in bruises. The improper admission of evidence is harmless when the evidence is "entirely cumulative." *State v. Williams*, 133 Ariz. 220, 226 (1982); *see also State v. Romero*, 240 Ariz. 503, 510, ¶ 17 (App. 2016) ("Cumulative evidence supports a fact 'otherwise established by existing evidence' . . . and it cannot be the very issue in dispute."). A video of a police interview with Freeman was shown to the jury, in which Freeman told police that A.S.'s daycare had commented on the number of bruises on A.S. on her bottom, face, and head and scratches on her back. Autopsy photos showed various bruises and abrasions on A.S.'s body including her head, nose, mouth, chin, ear, arms, legs, and feet. In the video of A.S. swimming an abrasion on her nose is visible. Further, Kerry and Austin's testimony that the bruises looked like A.S. had been grabbed is consistent with the video from the tire shop that showed Freeman grabbing or hitting A.S. numerous times. Thus, any testimony that she was often covered in bruises was cumulative and did not prejudice Freeman.

**¶41** Freeman contends it was error for Kerry Mays to describe A.S.'s breathing as "agonal." Again, because Freeman did not object, he must establish fundamental error. Even assuming error occurred, Freeman provides no rationale for how this amounts to fundamental error or how a reasonable jury could have reached a different result without this testimony. *See Escalante*, 245 Ariz. at 144, ¶ 29.

**¶42** Freeman also argues Dr. Foulad did not have the requisite training to opine on child abuse or the mechanism in which A.S. was injured given that he was "just over a year out of medical school." Freeman contends the court fundamentally erred in allowing Foulad to testify as an expert. To be admissible, "expert testimony must (1) come from a qualified expert, (2) be reliable, (3) aid the triers of fact in evaluating and understanding matters not within their common experience, and (4) have probative value that outweighs its prejudicial effect." *State v. Moran*, 151 Ariz. 378, 380–81 (1986). Foulad received his undergraduate and medical degrees from the University of California Los Angeles and was participating in general surgery residency training. Foulad testified that Loma Linda University Medical Center, where he was receiving such training, receives some of the highest numbers of child abuse cases of any hospital in the country. Foulad also explained he was part of the hospital's pediatric surgery and trauma team. Although Foulad was only in his second year of residency, his training and expertise allowed him to testify about A.S.'s injuries and the mechanism of injury. The absence of additional qualifications goes to the weight of his testimony, not its admissibility. *See State v. Delgado*, 232 Ariz. 182, 186, ¶ 12 (App. 2013). The court did not err in allowing Foulad to testify as an expert.

## I. Evidence of Past Bruising

**¶43** Freeman argues the testimony given by a store clerk from the convenience store Freeman and A.S. frequented was improperly admitted. The store clerk testified about A.S.'s bruising and stated that A.S. seemed "afraid." Before trial the State filed a motion in limine to allow the testimony, which Freeman opposed and the court denied. However, when the store clerk testified Freeman did not object. Thus, we review for fundamental error.

**¶44** Because the court denied the State's motion in limine, the testimony should have been stricken. Nonetheless, like the testimony about A.S.'s bruises given by Austin and Kerry Mays, ample other evidence was presented about the extensive bruising on A.S. and the statements were

cumulative. *See supra*, ¶ 40. Thus, Freeman is unable to show fundamental error occurred.

¶45        Concerning the testimony that A.S. seemed "afraid," Freeman has not shown the error went to the foundation of his case, took away a right essential to his defense, or was so harmful he could not have received a fair trial. *See Escalante*, 245 Ariz. at 142, ¶ 21. Nor has Freeman established he was prejudiced by the error. Even without the isolated comment that A.S. seemed "afraid," no reasonable jury could have reached a different result. *See id*. at ¶ 34.

### J.        Prosecutorial Misconduct

¶46        Freeman argues the prosecutor's pervasive misconduct requires a new trial. Specifically, he contends the prosecutor (1) asked questions aimed at eliciting improper evidence, and (2) intentionally defied the court's order excluding the evidence of past bruising. Prosecutorial misconduct is defined as "intentional conduct which the prosecutor knows to be improper and prejudicial." *State v. Martinez*, 221 Ariz. 383, 393, ¶ 36 (App. 2009) (quoting *Pool v. Superior Court,* 139 Ariz. 98, 108–09 (1984)). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

¶47        The instances Freeman points to include the testimony of Kerry Mays and the store clerk. The prosecutor asked Kerry, "[a]nything else during the second time you were at the hospital?" Kerry responded to the question by saying that A.S. responded, "Daddy," when she was asked at the hospital what happened to her. And when the prosecutor had asked the store clerk if A.S. "appear[ed] to be in any pain, [or] having difficulty walking or breathing," the clerk responded that A.S. seemed "afraid." In neither of these instances is there evidence that the prosecutor engaged in conduct known to be improper and prejudicial. *See Martinez*, 221 Ariz. at 393, ¶ 36.

¶48        The prosecutor also asked the clerk what she saw on A.S. and the clerk said she saw bruises. The prosecutor then asked about where the bruises were and what they looked like. While this was not permitted because it conflicted with the court's ruling on the motion in limine, this brief questioning did not infect the trial with unfairness. *See Hughes*, 193 Ariz. at 79, ¶ 26.

**¶49**　　　Freeman has failed to meet his substantial burden to prove a denial of his due process, even when all of the claimed instances of pervasive misconduct are viewed together. *See id.* ("To determine whether prosecutorial misconduct permeates the entire atmosphere of the trial, the court necessarily has to recognize the cumulative effect of the misconduct.").

## CONCLUSION

**¶50**　　　We affirm Freeman's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:　AA